STATE of Iowa, Appellant,

v.

James CONNER, Appellee.

No. 62499.

Supreme Court of Iowa.

May 21, 1980.

Thomas J. Miller, Atty. Gen., Selwyn L. Dallyn, Asst. Atty. Gen., and Dan L. Johnston, Polk County Atty., for appellant.

James F. Fowler of Wilson, Goodhue & Fowler, Indianola, for appellee.

ALLBEE, Justice.

This appeal by the State from trial court's dismissal of an indictment against defendant Jim Conner requires our determination of the element of culpability intended by subsection 707.5(1), Supplement to the Code 1977. That section provides: "A person commits a class 'D' felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape."

The indictment in question accused defendant of violating subsection 707.5(1) by unlawfully and unintentionally causing the death of Frank Matijevich as a result of committing a public offense on February 4, 1978. In response to the indictment, defendant moved for a bill of particulars in part to learn what "public offense" the State would rely upon to prove violation of subsection 707.5(1). In the bill of particulars subsequently filed, the State said it would rely upon defendant's disobedience of a signal light while operating his motor vehicle.

Defendant then filed a motion to dismiss, attacking the constitutionality of subsection 707.5(1) and asserting that the statute should not be construed so as to include within its definition the mere disobedience of a signal light. Trial court sustained the motion upon solely the statutory construction grounds and did not address the constitutional grounds.

I. *Statutory Construction.*

The State argues, first, that the statutory subsection construed, § 707.5(1), is unambiguous and thus statutory construction was inappropriate. While conceding that under the common law, prior to the enactment of subsection 707.5(1), a defendant could not be convicted of involuntary manslaughter on the basis of a mere traffic violation absent recklessness on his part, it argues that subsection 707.5(1) creates a new crime in which recklessness is not a necessary element. This view, it says, is supported by its contention that subsection 707.5(2), alternatively defining involuntary manslaughter as unintentionally causing death "by the commission of an act in a manner likely to cause death or serious injury," represents a codification of the common law definition of involuntary manslaughter, which required recklessness; thus, to impute to subsection 707.5(1) the element of recklessness would make that section mere surplusage.

The State's manner of examining subsection 707.5(1) for indefiniteness or ambiguity is myopic. The polestar of statutory interpretation is legislative intent. *E. g., Loras College v. Iowa Civil Rights Commission*, 285 N.W.2d 143, 147 (Iowa 1979). To discern that intent, it is necessary to examine the whole act of which the statutory provision in question is a part. *E. g., Williams v. Osmundson*, 281 N.W.2d 622, 626 (Iowa 1979); *In re Estate of Bliven*, 236 N.W.2d 366, 369 (Iowa 1975); see 2A C. Sands, *Statutes and Statutory Construction* § 47.02 (4th ed. 1973). Particularly relevant are substantively related provisions adopted in the same legislative session. *See, e. g., State v. Schmitt*, 290 N.W.2d 24, 26 (Iowa 1980); *Iowa Farm Serum Co. v. Board of Pharmacy Examiners*, 240 Iowa 734, 740, 35 N.W.2d 848, 851 (1949). From this examination of related provisions, an overall legislative scheme may become evident. If any single provision, read literally and in isolation, would be repugnant to the overall purpose or scheme, reasonable minds may be uncertain as to its meaning. Statutory construction is then appropriately invoked. *See, e. g., Janson v. Fulton*, 162 N.W.2d 438, 443 (Iowa 1968); *Case v. Olson*, 234 Iowa 869, 876–77, 14 N.W.2d 717, 721 (1944).

As defendant correctly observes, subsection 707.5(1) is repugnant to the general scheme of sections 707.1–.5, which show a gradation of culpability commensurate with the gradation of punishment. Accordingly, first degree murder is listed first in the Code, requiring malice aforethought plus deliberateness and premeditation or certain aggravating circumstances, §§ 707.1, .2, Supplement to the Code 1977, and imposing a life sentence for its violation, see *id.*; § 902.1. Next is listed second degree murder, requiring only malice aforethought, §§ 707.1, .3, and permitting imposition of a maximum penalty of twenty-five years of confinement, see *id.*; § 902.9(1). Voluntary manslaughter follows, requiring intentional killing in a heat of passion resulting from serious provocation, § 707.4, and permitting imposition of a maximum penalty of ten years of confinement and $5000, see *id.*; § 902.9(3). Last in this sequence are the provisions for involuntary manslaughter, or unintentional killing. The first, subsection 707.5(1), is the unlawful act provision quoted at the beginning of this opinion. It is a class "D" felony, permitting imposition of a maximum sentence of five years and $1000. *Id.*; § 902.9(4). The second, subsection 707.5(2), requiring causing death by committing an act "in a manner likely to cause death or serious injury," is an aggravated misdemeanor, for which the maximum penalty is only two years of imprisonment and $5000. *Id.*; § 903.1(1).

We agree with the State that recklessness is an implied requirement of subsection 707.5(2). As noted in J. Yeager & R. Carlson, 4 *Iowa Practice: Criminal Law and Procedure* § 148 (1979), "the words 'in a manner likely to cause death or serious injury' implies an awareness of the risk or at least that the accused should have been aware of the risk." It is this subjective awareness of the risk, although usually determined objectively, that distinguishes civil negligence, which requires only objective awareness of the risk, from criminal negligence, *id.*; see W. LaFave & A. Scott, *Handbook on Criminal Law* § 30, at 209–15 (1972); R. Perkins, *Criminal Law* 760–61 (2d ed. 1969), and has been considered a required element of manslaughter in our prior cases, see *State v. Wallin*, 195 N.W.2d 95, 99 (Iowa 1972); *State v. Boner*, 186 N.W.2d 161, 166 (Iowa 1971) ("what might be considered actionable negligence in the law of torts, unaccompanied by a wanton and reckless disregard or indifference to the safety of others will not constitute the basis for a conviction of the crime of manslaughter"). More recently, we have labeled this standard of culpability "recklessness." *State v. Kernes*, 262 N.W.2d 602, 605–06 (Iowa 1978).

To read subsection 707.5(1) literally, as requiring no *mens rea* or fault, but subsection 707.5(2) as requiring recklessness would be to impose a stricter sanction for a crime requiring less culpability, in contradiction of the statutory scheme. This contradiction warrants the application of rules of statutory construction because of the uncertainty

it creates as to the intended meaning of subsection 707.5(1).

▉ Another justification for statutory construction here is the often-repeated principle first articulated by this court in *State v. Dunn*, 202 Iowa 1188, 1189, 211 N.W. 850, 851 (1927): "Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design." Applying this rule, this court has, on a number of occasions, construed a statute to include a criminal intent element absent from its face. *See, e. g., State v. Christopher*, 176 N.W.2d 777, 778 (Iowa 1970) (damage apparent to defendant implied element in statute requiring driver who collides with unattended vehicle to leave his name and address); *State v. Ramos*, 260 Iowa 590, 594–95, 149 N.W.2d 862, 864–65 (1967) (scienter implied in obscenity statute); *State v. Drummer*, 254 Iowa 324, 117 N.W.2d 505 (1962) (guilty knowledge implied in statutory crime of operating motor vehicle without owner's consent); *State v. Schultz*, 242 Iowa 1328, 50 N.W.2d 9 (1951) (guilty knowledge implied in statute prohibiting sale of beer to minors); *cf. State v. Waterman*, 190 N.W.2d 809, 814 (Iowa 1971) (Becker, J., concurring) (intent to violate flag desecration statute strongly implied by words in statute). This type of statutory construction is not uncommon. *See* W. LaFave & A. Scott, *supra* § 31, at 219–21 (1972).

To supply the appropriate element of criminal intent or fault included in subsection 707.5(1), we turn to the common law definition of the crime. Consideration of the common law concerning the same or similar subjects is a statutorily prescribed rule of statutory construction, § 4.6(4), The Code, which becomes especially important when an element of criminal intent is missing from a statute, *see Morissette v. United States*, 342 U.S. 246, 252, 72 S.Ct. 240, 244,

96 L.Ed. 288, 294 (1952); 2A C. Sands, *supra* § 50.02, at 275, and when the statute purports to restate the common law, *see Peterson v. Gittings*, 107 Iowa 306, 311, 77 N.W. 1056, 1058 (1899); 2A C. Sands, *supra* § 50.02, at 274. *Emery v. Fenton*, 266 N.W.2d 6, 8 (Iowa 1978), indicates that the revision of the Iowa criminal law, of which subsection 707.5(1) is a part, is considered "primarily a restatement of prior law" by Professor John H. Yeager, who prepared the initial drafts of new statutes for the legislative subcommittees on substantive criminal law and sentencing.

Prior to the enactment of the new criminal code on January 1, 1978, manslaughter was defined only by case law. *State v. Shimon*, 182 N.W.2d 113, 114–15 (Iowa 1970). Commonly, that definition, as articulated in the cases, made no reference to the particular *mens rea* or fault required for involuntary manslaughter. *See, e. g., State v. Boston*, 233 Iowa 1249, 1255, 11 N.W.2d 407, 410 (1943); *State v. Kellison*, 233 Iowa 1274, 1277, 11 N.W.2d 371, 373 (1943) (defined as the unintentional killing of a human being in the doing of an unlawful act not amounting to a felony or of some lawful act in an unlawful manner). Nonetheless, this court consistently superimposed upon that definition, at least in the context of violations of rules of the road,[1] a requirement that the unlawful act which formed the basis of the involuntary manslaughter charge, be either *malum in se* or performed recklessly. *See, e. g., State v. Davis*, 196 N.W.2d 885, 890, 891–92 (Iowa 1972); *State v. Wallin*, 195 N.W.2d 95, 98–99 (Iowa 1972); *State v. Boner*, 186 N.W.2d 161, 166 (Iowa 1971); *Kellison*, 233 Iowa at 1276–78, 11 N.W.2d at 372–73; *State v. Graff*, 228 Iowa 159, 165–66, 290 N.W. 97, 100 (1940) (in response to State's argument that certain cases defined manslaughter as merely the accidental killing of a human being while engaged in an unlawful act, this court stated that recklessness has also been consistently required in motor vehicle

---

1. In the context of manslaughter-by-gunfire, however, our cases, unfortunately, have not meticulously distinguished between negligence and recklessness. A possible explanation for this is that the negligent handling of a deadly or dangerous weapon may in itself constitute recklessness. *See State v. Kernes*, 262 N.W.2d 602, 604–05 (Iowa 1978).

operation cases); *State v. Clark*, 196 Iowa 1134, 1139–40, 196 N.W. 82, 84 (1923) (instruction which entitled jury to convict defendant if certain types of unlawful operation of his automobile caused death criticized because "[t]his instruction eliminates the gross negligence and reckless indifference to life which supplies the intent in criminal law in a case of this character"); Note, *Homicide by Motor Vehicle—A Survey and Proposal*, 44 Iowa L.Rev. 558, 566–67 (1959).

■ We conclude that the General Assembly intended to preserve the common law requirement of recklessness in its provisions for involuntary manslaughter. Only by construing subsection 707.5(1) to require some degree of fault at least equivalent to that required by subsection 707.5(2) is the legislative scheme of sanctions commensurate to culpability carried forward.

The only change from the common law definition made by the General Assembly was its discarding the *malum in se/malum prohibitum* distinction in favor of designating all public offenses,[2] except forcible felonies or escapes, as possible unlawful acts which may form the basis for the unlawful act type of involuntary manslaughter. This may well serve to clarify the law on this subject as the *malum in se/malum prohibitum* distinction has been criticized for its vagueness. *See, e. g.*, W. LaFave & A. Scott, *supra* § 6, at 29–31; Note, *Iowa Criminal Law—A Need for Reform*, 51 Iowa L.Rev. 883, 893 (1966). That change from the common law does not indicate, however, that the General Assembly also intended to eradicate the common law requirement of recklessness from the definition of involuntary manslaughter. On the contrary, as the *malum in se/malum prohibitum* distinction may be said to have served as a means of requiring criminal intent or fault, the need for preserving recklessness, as a replacement for that device, is now greater.

■ Another applicable principle of statutory construction is that "a construction resulting in unreasonableness as well as absurd consequences will be avoided." *Janson v. Fulton*, 162 N.W.2d 438, 442 (Iowa 1968); see § 4.4(3), The Code; 2A C. Sands, *supra* § 45.12, at 37. An interpretation of subsection 707.5(1) so as to exclude any particular mental state requirement, as urged by the State, would, in our opinion, lead to unreasonable consequences. A "public offense," as defined in section 701.2, which may provide the basis for involuntary manslaughter under subsection 707.5(1) necessarily includes classes of offenses requiring no fault or mere negligence for their commission. Perhaps most significant is the large class of traffic regulation violations, which we have categorized as public welfare offenses that impose strict liability. *Iowa City v. Nolan*, 239 N.W.2d 102, 104 (Iowa 1976).

We believe that convicting someone of involuntary manslaughter, thereby subjecting him to a possible sentence of five years of imprisonment, when that individual was not conscious of the grave risks of his acts is unjust. It stigmatizes and punishes one who is morally blameless. *See* W. LaFave & A. Scott, *supra* § 79, at 602 ("Where . . the result is both unintended and produced without any consciousness of the risk of producing it, it seems too harsh and illogical."); Karaba, *Negligent Homicide or Manslaughter: A Dilemma*, 41 J.Crim.L. & Criminology 183, 183 (1950) ("It has been said that the term 'manslaughter' imports a degree of brutality which jurors do not care to cast upon a merely negligent driver. Moreover, the penalty in manslaughter cases is often greater than that which jurors feel is warranted in auto death cases.") (footnote omitted); Sayre, *Public Welfare Offenses*, 33 Colum.L.Rev. 55, 72 (1933) ("To subject defendants entirely free from moral blameworthiness to the possibility of prison sentences is revolting to the community sense of justice . . . . Crimes

---

**2.** Section 701.2 defines public offense as "that which is prohibited by statute and is punishable by fine or imprisonment." That definition supplies the meaning of "public offense" in subsection 707.5(1). § 702.1, Supplement to the Code 1977; *see State v. Thomas*, 275 N.W.2d 422, 423 (Iowa 1979) (the legislature is its own lexicographer).

punishable with prison sentences, therefore, ordinarily require proof of a guilty intent."); Note, *A Reexamination of the Misdemeanor Manslaughter Doctrine*, 38 Ky. L.J. 118, 126 (1949) ("the misdemeanor-manslaughter rule is too harsh in its statement, evaded in its application, and should be superseded by the companion concept of the negligent-manslaughter which comprises the great majority of the cases under the misdemeanor-manslaughter doctrine, and properly excludes those under that doctrine where a conviction would be unjust"); Comment, *The Fallacy and Fortuity of Motor Vehicle Homicide*, 41 Neb.L.Rev. 793, 802 (1962) ("Is it fair to impose penal sanctions on a driver where criminal negligence is lacking? It is submitted that it is not.") (footnote omitted) [hereinafter cited as Nebraska Comment].

The unfairness is partially rooted in the fortuity of the imposition of the criminal sanction. Doubtless, a large number of this state's motorists commit such traffic violations as disobeying a signal light without being penalized by more than a nominal fine. To single out and severely punish those motorists whose violations happen to also cause death, when committed without recklessness, is arbitrary and unreasonable. *See* Nebraska Comment, *supra*, at 794, 812.

Further, such sanction serves none of the principal, preferred purposes of criminal prosecutions—deterrence, rehabilitation and isolation of dangerous people from society. *See Morissette v. United States*, 342 U.S. at 251, 72 S.Ct. at 243, 96 L.Ed. at 294; § 901.5, Supplement to the Code 1977; W. LaFave & A. Scott, *supra* § 5, at 22–23. "Retribution is no longer the dominant objective of the criminal law." *Williams v. New York*, 337 U.S. 241, 248, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337, 1343 (1949). One who is not aware of the criminality of his conduct cannot be deterred from performing it. And one who is morally blameless need not be isolated from society or rehabilitated. *See* W. LaFave & A. Scott, *supra* § 32, at 222; Nebraska Comment, *supra,* at 812–13.

Contrary to what the dissent suggests, an interpretation of subsection 707.5(1) which excluded a requirement of recklessness would be unusual in the context of motor vehicle regulation violations. Some greater degree of negligence than ordinary negligence is generally required for conviction of homicide based on the operation of a motor vehicle. 61A C.J.S. *Motor Vehicles* § 659(1)(a), at 470 (1970). Even an examination of the law of motor vehicle homicide in states with involuntary manslaughter statutes like ours supports our view of the unreasonableness of such an interpretation.

Of the nine states with involuntary manslaughter statutes similar to ours, cited by the dissent, eight of those states now also have motor vehicle homicide statutes, which include what might be generally termed a recklessness requirement or carry sentences of not more than one year's imprisonment for conduct lacking recklessness. *See* Cal. Penal Code, § 192, subd. 3 (West 1970); *id.* § 193 (Supp.1980) (one year maximum for commission of unlawful act or lawful act in unlawful manner, with or without gross negligence); Ga.Code Ann. § 68A–903 (Supp.1979); *id.* § 26–401(e), (g) (1978) (five years maximum for reckless driving, driving with ability impaired by alcohol or drugs, or fleeing or attempting to elude pursuing police vehicle; maximum for other violations less than one year); Neb.Rev. Stat. § 28–306 (Supp.1979); *id.* §§ 28–105, 106 (Supp.1978) (five years maximum for reckless driving, willful reckless driving and driving under influence of liquor or drugs; one year maximum for other violations); N.M.Stat.Ann. §§ 66–8–101, –7, –9 (Supp. 1979) (five years maximum for driving under the influence of liquor or drugs or for reckless driving, ninety days maximum for other types of unlawful operation of motor vehicle); Ohio Rev.Code Ann. §§ 2903.-06, .07, 2929.11(B)(4), .21(B)(1) (Baldwin 1979) (five years maximum for recklessness, six months maximum for negligence); Okla.Stat. tit. 47, § 11–903 (1971) (one year maximum for driving "in reckless disregard of the safety of others"); [3] Tenn.Code Ann.

---

**3.** The negligent homicide statute described here supersedes the manslaughter statute in cases of reckless driving, but not in cases of driving while intoxicated. *Compare Short v. State*, 560

§§ 39–2412, –2413 (Supp.1979) (five years maximum for "conduct creating a substantial risk of death or serious bodily injury to a person under circumstances manifesting extreme indifference to the value of human life," twenty-one years maximum for intoxication);[4] Wyo.Stat. § 31–5–1115 (1977) (one year maximum for driving "in reckless disregard of the safety of others").

Finally, in response to the State's argument that construing subsection 707.5(1) as requiring recklessness renders that subsection surplus to subsection 707.5(2), we note first that the common law made the distinction between the two types of involuntary manslaughter, unlawful act and lawful act, while generally requiring recklessness for both types. *See, e. g., State v. Graff*, 228 Iowa 159, 165–67, 290 N.W. 97, 100 (1940). Secondly, the two subsections are different because the commission of a public offense is necessary for (1), but not for (2). *State v. Inger*, 292 N.W.2d 119, 123–24 (Iowa 1980).

■ We consider the statutory construction ground of defendant's motion to dismiss as that prescribed by Iowa R.Crim.P. 10(6)(a), providing for dismissal "[i]f it appears from the bill of particulars . . . that the particulars stated do not constitute the offense charged . . . ." In its bill of particulars, the State failed to show that defendant's conduct in committing a public offense amounted to recklessness. Consequently, it may be urged that the particulars did not constitute the offense charged, involuntary manslaughter, and that the motion to dismiss was appropriately granted for that reason. *Cf. State v. Huguet*, 369 So.2d 1331, 1335 (La.1979) (State must set out facts to show element court construes statute to prescribe in order to withstand motion to quash for insufficiency of charge as explained in bill of particulars). *See also State v. Marti*, 290 N.W.2d 570, 578 (Iowa

1980) (noting similarity between Louisiana provision and Iowa R.Crim.P. 10(6)(a)).

However, we believe that a bill of particulars should be examined for purposes of a motion to dismiss in light of the request made by the defendant. Accordingly, if the defendant's request is addressed to only one element of the crime, the State's bill should be examined only for sufficiency of its factual allegations to satisfy that element, not all elements of the crime. This construction of rule 10(6)(a) is necessary to prevent the anomaly of the State's suffering a dismissal because its bill insufficiently described the particulars of the offense but yet sufficiently met the defendant's request for information.

Here, defendant's motion for a bill of particulars sought only to learn the public offense the State would seek to prove and the cause of death of the person alleged to have been killed by defendant. Thus, it would initially appear that the State's bill only needed to set forth allegations which would have satisfied the public offense and causation elements of the crime to withstand a motion to dismiss; the sufficiency of the State's bill to allege the *mens rea* or fault element was not addressed by defendant's motion.

The State, however, drew that element into question by informing the court through the following exchange during a hearing on the motion to dismiss that its position was that the mere running of a red light which causes death constitutes involuntary manslaughter:

> THE COURT: Again, Mr. Pennington, do I understand the State's position to be and under the new code, that the mere running of a red light, where death is involved, constitutes involuntary manslaughter?

P.2d 219, 220–21 (Okl.Cr.App.1977), *with Lomahaitewa v. State*, 581 P.2d 43, 44 (Okl.Cr. App.1978).

4. Tennessee's vehicular homicide statute does not preclude prosecution under other criminal statutes. Tenn.Code Ann. § 39–2414 (Supp. 1979). However, Tennessee courts appear to

apply the involuntary manslaughter statute only where the defendant's motor vehicle operation was *malum in se* or where the defendant was criminally negligent. *See, e. g., Grindstaff v. State*, 214 Tenn. 58, 69–71, 377 S.W.2d 921, 926–27 (1964); *Brown v. State*, 201 Tenn. 50, 53, 296 S.W.2d 848, 849 (1956) (alternative holding); 23 Tenn.L.Rev. 437, 437–38 (1954).

MR. PENNINGTON: That is what the State is alleging and has so alleged in response to the defendant's motion for bill of particulars and indicated to the defendant that that's the basis for the filing of this charge.

By this exchange, the State effectively enlarged the scope of trial court's consideration of the bill to include all elements of the crime. As the bill did not satisfy the recklessness element, the motion to dismiss was correctly sustained.

II. *Constitutionality of Subsection 707.-5(1).*

Defendant raises a number of other, constitutional issues, attacking the statute facially and as applied to one who has committed a signal light violation. Our resolution of this appeal by construing subsection 707.5(1) so as to include a requirement of recklessness induces us to avoid those issues. *See, e. g., State v. Davis,* 269 N.W.2d 434, 439 (Iowa 1978) ("courts have a duty to avoid constitutional questions concerning statutes when merits of a case may be fairly decided without facing such questions").

AFFIRMED.

REYNOLDSON, C. J., and LARSON, J., concur.

McCORMICK, J., joined by LeGRAND, REES, and HARRIS, JJ., concurs specially.

UHLENHOPP, J., joined by McGIVERIN, J., dissents.

McCORMICK, Justice (concurring specially).

While I think it would be unwise and unjust, I do not question the authority of the General Assembly to define involuntary manslaughter without a mental element. As noted in division IV of the dissent, the wisdom and justice of a statute are for the legislature to decide. To the extent it suggests otherwise, I do not join the court's opinion. However, I join the remainder of the opinion and concur in the result because I do not believe the General Assembly did omit the recklessness element in section

707.5(1). We are required by section 4.1(2) to construe statutory language in context, and omitting the recklessness element from section 707.5(1) would be repugnant to the context of the provision.

LeGRAND, REES, and HARRIS, JJ., join this special concurrence.

UHLENHOPP, Justice (dissenting).

I. I think we should apply section 707.-5(1) in accordance with its plain and unambiguous terms. The court majority injects a common-law recklessness requirement into the section by a process of construction. This court has often said however that no room for construction exists when a statute is plain and unambiguous. *E. g., Spilman v. Board of Directors,* 253 N.W.2d 593, 596 (Iowa 1977) ("It is our duty to give it the interpretation its language calls for and not to speculate as to probable legislative intent apart from the wording used."); *First National Bank of Ottumwa v. Bair,* 252 N.W.2d 723, 725 (Iowa 1977) ("Where the language is clear and plain, there is no room for construction. . . ."); *State v. Dunham,* 232 N.W.2d 475, 476 (Iowa 1975) ("If the language of a statute is plain and unambiguous no duty of interpretation arises . . . ."); *Maguire v. Fulton,* 179 N.W.2d 508, 510 (Iowa 1970) ("If the language of a statute when given its plain and rational meaning is precise and free from ambiguity, no more is necessary than to apply to the words used their ordinary sense in connection with the subject considered.").

II. I do not see how the General Assembly could have made this section clearer. The State charged defendant under paragraph 1 of the section. The section in its entirety reads:

1. A person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

2. A person commits an aggravated misdemeanor when the person unintentionally causes the death of another person by the commission of an act in a

manner likely to cause death or serious injury.

Involuntary manslaughter as defined in this section is an included offense under an indictment for murder in the first or second degree or voluntary manslaughter.

What is a "public offense" under paragraph 1 of this section? Section 701.2 defines those words thus:

A public offense is that which is prohibited by statute and is punishable by fine or imprisonment.

Also pertinent is section 702.1, which provides:

Wherever a term, word or phrase is defined in the criminal code, such meaning shall be given wherever it appears in the Code, unless it is being specially defined for a special purpose.

(Both running a stop light and exceeding the speed limit are "prohibited by statute" and "punishable by fine or imprisonment." §§ 321.256, 321.285, 321.482, 903.1(3), The Code.)

III. The legislative history of section 707.5 does not support injection of a recklessness requirement; on the contrary it shows that the General Assembly turned away from the common-law definition of involuntary manslaughter containing the recklessness element. The prior section on manslaughter did not define the crime and required us to look to the common law. § 690.10, The Code 1977 ("Any person guilty of the crime of manslaughter shall be imprisoned in the penitentiary not exceeding eight years, and fined not exceeding one thousand dollars."); see *State v. Davis*, 196 N.W.2d 885, 890 (Iowa 1972). When the drafting committee for the new criminal code came to this class of homicide, it initially proceeded along the line of our previous common-law definition of manslaughter; by doing so it retained the recklessness concept. 1975 S.J. 210. In the Senate the Committee on Judiciary and Law Enforcement filed an amendment which in effect would also have referred us to the common-law definition of manslaughter. 1975 S.J. 321.

Shortly thereafter however the Chairman of the Judiciary Committee, who was also the Senate floor manager of the bill, filed an amendment which departed substantially from the common law. 1975 S.J. 358, 396. The amendment approached involuntary manslaughter from the standpoint of homicide by the commission of a public offense or by the commission of an act in a manner likely to cause death or serious injury. This approach prevailed in the General Assembly in what is now section 707.5. That body thus substituted its own definition of the crime for the common-law definition containing the recklessness requirement. For various "unlawful act" manslaughter statutes in other jurisdictions, see Cal.Penal Code § 192 (West 1970); Ga.Code Ann. § 26–1103(a) (1978); Neb.Rev.Stat. § 28–305(1) (Supp.1978); N.M.Stat.Ann. § 30–2–3(B) (1978); Ohio Rev.Code Ann. § 2903.04 (1971); Okla.Stat.Ann. title 21, § 711 (West 1958); Tenn.Code Ann. § 39–2409 (1975).

These jurisdictions also enacted separate motor vehicle homicide statutes. Cal.Penal Code § 192, subd. 3 (West 1970); *id.* § 193 (Supp.1980); Ga.Code Ann. § 68A–903 (Supp.1979); *id.* § 26–401(e), (g) (1978); Neb.Rev.Stat. § 28–306 (Supp.1979); *id.* §§ 28–105, –106 (Supp.1978); N.M.Stat. Ann. §§ 66–8–101, –7, –9 (Supp.1979); Ohio Rev.Code Ann. §§ 2903.06, .07, 2929.-11(B)(4), .21(B)(1) (Baldwin 1979); Okla. Stat. tit. 47, § 11–903 (1971); Tenn.Code Ann. §§ 39–2412, –2413 (Supp.1979); Wyo. Stat. § 31–5–1115 (1977). Commonly these statutes specify the culpability required for a violation, and they differ in punishment for different degrees of homicide by vehicle from as little as a fine, see Neb.Rev.Stat. § 28–306(2), to as high as five years. See Ga.Code Ann. § 68A–903(a). As examples of various degrees of required culpability, the Georgia statute distinguishes between homicide resulting from reckless driving, driving with ability impaired by alcohol or drugs, fleeing the police, and homicide resulting from violation of other rules of the road; the Nebraska statute distinguishes between homicide resulting from reckless driving, willful reckless driving, driving under the influence of liquor or drugs, and other types of homicide by vehicle; and the Oklahoma statute requires reckless disre-

gard of the safety of others for any conviction on homicide by vehicle charges.

Statutory precedent thus existed for the Iowa General Assembly to enact a separate motor vehicle homicide statute specifying recklessness or other requirements. The General Assembly, however, did not take that approach either. Instead, it followed the lead of the State of Nevada which does not have a separate statute for motor vehicle homicide. Nev.Rev.Stat. § 200.070 (1973). Hence we do not have "recklessness" or a similar term in our involuntary manslaughter law. The General Assembly provided instead in section 707.5 that this crime consists of unintentionally causing the death of another "by the commission of a public offense other than a forcible felony or escape" or "by the commission of an act in a manner likely to cause death or serious injury." Perhaps a good *legislative* argument could be developed that Iowa should have a separate motor vehicle homicide statute specifying recklessness or other elements, but that does not authorize the *judiciary* to write in such requirements.

IV. When the language of legislation is plain, courts should not by the process of construction inject their own views on the advisability of statutory provisions. We have repeatedly said that the wisdom of legislation is for the General Assembly and not for us to decide. *E. g., Hawkins v. Preisser*, 264 N.W.2d 726, 729 (Iowa 1978) ("we do not pass upon the wisdom of the statute"); *City of Waterloo v. Selden*, 251 N.W.2d 506, 508 (Iowa 1977) ("Courts do not pass on the policy, wisdom, advisability or justice of a statute."); *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973) ("Our view of the wisdom of the legislation is irrelevant."). If this statute proves to be unwise, the General Assembly can change it. I note however that the Nevada statute provides, "Involuntary manslaughter shall consist in the killing of a human being without any intent to do so, in the commission of an unlawful act . . . .", Nev. Rev.Stat. § 200.070 (1973), that the Nevada Supreme Court has approved submission of this statute to juries in the words of the statute, *State v. Lewis*, 59 Nev. 262, 271, 91 P.2d 820, 823–24 (1939), and that the Neva-

da legislature has evidently found no necessity to change the statute.

Failure to apply statutes in accordance with their plain language, by the process of construction, requires the General Assembly to act a second time in order to obtain application of its views. *Compare Rodriquez v. Fulton*, 190 N.W.2d 417, 419 (Iowa 1971) (§ 321B.3 of the Code construed to require demand for blood test prior to other tests in drunken driving cases despite absence of statutory language to that effect), *with* 1974 Session, 65th G.A. ch. 1194, § 1 (spelling out that officer makes the choice of the test).

V. I acknowledge a statute may be so general that the courts are obliged to fill up the details by decision. Our prior manslaughter section was of that nature. In those instances the statutes do not contain plain language to be carried out. The same cannot be said however of section 707.5(1); this statute contains a precise definition of the crime—"unintentionally causes the death of another person by the commission of a public offense other than a forcible entry or escape." The mental element is covered: "unintentionally" causes the death of another, *not* "unintentionally but recklessly" causes the death of another. I also acknowledge that courts have added requirements to save statutes from unconstitutionality. *State v. Ramos*, 260 Iowa 590, 595, 149 N.W.2d 862, 865 (1967) (scienter in obscenity statute). We do not however have a constitutional problem here—a subject I will now take up.

VI. In addition to his statutory construction argument, defendant asserts that section 707.5(1) violates various constitutional guarantees, but he cites no authority actually holding such a statute to be constitutionally infirm. To the contrary the statute is a quite common one. Defendant has the heavy burden of establishing that the statute clearly, palpably, and without doubt infringes constitutional rights. *State v. Jaeger*, 249 N.W.2d 688, 690–91 (Iowa 1977).

Defendant argues that the statute deprives him of due process because it is vague and overbroad. But in the same act a "public offense" is defined as that which

is prohibited by statute and punished by fine or imprisonment. We have statutory crimes in this jurisdiction, and the acts and omissions which are prohibited by statute and punished by fine or imprisonment are specified in the Code itself. The statute thus gives fair warning of what is prohibited and provides definite standards to enforcement officials. *See Grayned v. City of Rockford*, 409 U.S. 104, 108–09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227–28 (1972). The particular public offense underlying a given involuntary manslaughter charge may or may not require criminal intent, but that does not cause the statute to violate the Constitution. *Powell v. Texas*, 392 U.S. 514, 533–35, 88 S.Ct. 2145, 2154–55, 20 L.Ed.2d 1254, 1268–69 (1968); *Iowa City v. Nolan*, 239 N.W.2d 102, 104 (Iowa 1976).

Defendant also argues that the statute imposes cruel and unusual punishment. Cases of this kind involve the deaths of human beings, deaths allegedly resulting from the commission of public offenses. The General Assembly evidently regarded such incidents as serious. The penalty here is not "so excessively severe that it is disproportionate to the offense charged." *State v. Robbins*, 257 N.W.2d 63, 68 (Iowa 1977) (citations omitted). The maximum punishment was reduced from that under the former statute. On this subject see *State v. Baumann*, 236 N.W.2d 361, 363 (Iowa 1975) (five-year mandatory term for delivery of marijuana), and *State v. McNeal*, 167 N.W.2d 674, 677–78 (Iowa 1969).

Defendant contends that the statute creates an arbitrary, unreasonable classification, that it deprives him of equal protection of law. The classification in section 707.5 is a common one, and I cannot say it is irrational. *See State v. Boothe*, 284 N.W.2d 206, 208–09 (Iowa 1979); *Robbins*, 257 N.W.2d at 68; *Hack v. Auger*, 228 N.W.2d 42, 43 (Iowa 1975); *State v. Edwards*, 236 Ga. 104, 107, 222 S.E.2d 385, 387 (1976).

In a related argument defendant contends that laws must have a uniform application. Section 707.5(1), however, is not subject to the alleged infirmity in some statutes which predicate the crime of involuntary manslaughter on deaths resulting from violations of local ordinances; section 701.2 restricts a "public offense" to that which is prohibited by "statute". *See Annot.*, 85 A.L.R.3d 1072 (1978).

Defendant also argues that this prosecution would violate the guaranty against double jeopardy—he was previously convicted of running the red light. His double jeopardy argument, however, is not supported by our decisions. *See State v. Stergion*, 248 N.W.2d 911, 913–14 (Iowa 1976); *State v. Stewart*, 223 N.W.2d 250, 251 (Iowa), *cert. denied*, 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1974). *See also, In re Dennis B.*, 18 Cal.3d 687, 692, 135 Cal.Rptr. 82, 557 P.2d 514, 517 (1976); *People v. Townsend*, 214 Mich. 267, 275, 183 N.W. 177, 180 (1921); *State v. Empey*, 65 Utah 609, 618, 239 P. 25, 28 (1925); *Annots.*, 172 A.L.R. 1053 (1948), 44 A.L.R. 564 (1926).

I would therefore reverse the judgment and return the case to district court for trial.

McGIVERIN, J., joins in this dissent.