STATE of Iowa, Plaintiff-Appellee,

v.

Leeroy John WULLNER, Defendant-Appellant.

No. 85–642.

Court of Appeals of Iowa.

Dec. 23, 1986.

Charles L. Harrington, Appellate Defender, and Deborah A. Goins, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Elizabeth E. Ciebell, Asst. Atty. Gen. and Denver D. Dillard, Co. Atty., for plaintiff-appellee.

Considered by OXBERGER, C.J., and SNELL and SCHLEGEL, JJ.

SNELL, Judge.

On July 30, 1984, the appellant, LeeRoy Wullner, was charged by trial information with involuntary manslaughter, leaving the scene of an accident resulting in death, and operating a motor vehicle while under the influence of alcohol. The latter charge was subsequently amended to allege a third incidence of that offense. These charges

arose out of a car-bicycle accident that occurred on July 4, 1984, in Cedar Rapids, Iowa. Wullner's motions to dismiss the charge of operating a motor vehicle while under the influence of alcohol and to suppress certain evidence were denied by the district court.

Trial commenced on February 25, 1985. The jury returned a verdict finding Wullner guilty of the three offenses charged. Following the denial of his motion for a new trial, Wullner was sentenced to an indeterminate term not to exceed five years on the manslaughter conviction, to run concurrently with an indeterminate term not to exceed five years on the conviction of operating a motor vehicle while under the influence of alcohol, third offense. Wullner had stipulated to the two prior offenses. In addition, the district court imposed a consecutive indeterminate term not to exceed two years on the leaving the scene of an accident resulting in death conviction. This appeal followed.

■ Wullner first alleges that the district court failed to properly instruct the jury. This allegation by Wullner is bottomed on two theories, the first of which is that the district court erred in refusing to instruct the jury on a recklessness element in connection with the charge of involuntary manslaughter. In support of this argument, Wullner directs our attention to *State v. Connor*, 292 N.W.2d 682 (Iowa 1980). *Connor* held that the 1978 statutory codification of the crime of involuntary manslaughter should be construed as retaining the common-law element of recklessness. *Id.* at 686. In light of this case, Wullner contends the district court's refusal to instruct the jury on the element of recklessness was error. We do not agree.

Iowa Code section 707.5(1) (1985) provides that

[a] person commits a class "D" felony when the person unintentionally causes the death of another person by the commission of a public offense other than a forcible felony or escape.

The "public offense" underlying the charge in *Connor* was the defendant's disobedience of a traffic signal light while operating his motor vehicle. Against that factual background, the court held that only by construing subsection 707.5(1) to require some degree of fault at least equivalent to the recklessness required by subsection 707.5(2) could the legislative scheme of sanctions commensurate with culpability be furthered. *Id.* at 686. *Connor* was not a case that dealt with an involuntary manslaughter charge arising from allegations of drunken driving. That case did not deal, consequently, with the present issue of whether recklessness remains as an essential element in such cases.

Prestatutory case law consistently imposed the requirement that, in the context of violations of rules of the road, the basis of the involuntary manslaughter charge be either *malum in se* or performed recklessly. *Connor*, 292 N.W.2d at 685. Driving while under the influence of alcohol was considered to be *malum in se, State v. Kellison*, 233 Iowa 1274, 1278, 11 N.W.2d 371, 373 (1943). Accordingly it was one of the ways in which manslaughter could be committed by the operation of a motor vehicle independent of an express showing of recklessness. *State v. Stewart*, 223 N.W.2d 250, 252 (Iowa 1974), *cert. denied*, 423 U.S. 902, 96 S.Ct. 205, 46 L.Ed.2d 134 (1975). Therefore, long prior to the statutory codification of the crime of involuntary manslaughter, the law of our state provided that "[i]nvoluntary manslaughter may be committed where death results from drunken driving *or* from wanton and reckless operation of an automobile." *Kellison*, 233 Iowa at 1277, 11 N.W.2d at 373 (emphasis added).

*Connor* states that the only change from this common-law definition affected by the statutory codification was the discarding of the *malum in se/malum prohibition* distinction in favor of designating all public offenses, except forcible felonies or escapes, as possible unlawful acts which may form the basis for the unlawful act type of involuntary manslaughter. *Connor*, 292 N.W.2d at 686. The statutory codification did not eliminate drunken driving as a basis

for an involuntary manslaughter charge. *See, e.g., State v. Brown,* 337 N.W.2d 507 (Iowa 1983). Nor do we think it placed the burden upon the State to make the patently absurd and generally redundant showing that a defendant's drunk driving was reckless. We hold that when using drunk driving as the "public offense" underlying a charge of involuntary manslaughter pursuant to Iowa Code section 707.5(1), the State need not show recklessness independent of the drunk driving. The district courts, accordingly, need not submit an instruction on recklessness in such cases. *Cf. State v. Kernes,* 262 N.W.2d 602, 606 (Iowa 1978) ("As in vehicular homicide cases, a person who causes the death of another by attempting to handle a deadly weapon while intoxicated is surely so reckless as to be guilty of homicide.")

 Wullner next challenges the submission of a flight instruction to the jury. At the conclusion of the evidence, the jury was given the following instruction:

If you find the offenses charged in the Trial Information were committed, and that the defendant fled from the scene of the crime, for the purpose of avoiding or retarding prosecution, then such flight is a circumstance you may consider in determining the guilt or innocence of the defendant.

The credit and weight, if any, to be given such circumstance is for the jury to determine from a consideration of all the evidence in the case.

Wullner argues that this instruction unduly focuses the jury's attention on "flight to avoid prosecution," thus excluding excusable reasons for leaving the scene, and improperly allows the jury to infer his guilt on all charges.

Our supreme court recently dealt with the permissibility of an identical flight instruction in *State v. Marsh,* 392 N.W.2d 132 (Iowa 1986). The court in *Marsh* stated that flight instructions are rarely advisable and should be cautiously given due, in part, to their propensity to unduly emphasize certain evidence. *Id.* at 134. As in *Marsh,* however, we do not think the de-

fendant here has shown he was prejudiced by the instruction. The instruction, contained in II Iowa Uniform Jury Instruction (Criminal) No. 214, is a correct statement of the law. Any inferences to be drawn from Wullner's flight were left to the jury in its consideration of all the evidence. Nor do we think the instruction excluded any possible justifiable reasons for leaving the scene. The instruction expressly leaves to the jury the determination of why the flight occurred. We find no reversible error in the giving of this instruction.

Wullner next argues that he was the victim of an unconstitutional stop by the police and that, accordingly, certain evidence should have been suppressed. On the night of the accident in issue here, Linn County Deputy Sheriff Lester Boots was patrolling on a road in the vicinity of the accident scene prior to the discovery of the accident. Deputy Boots observed Wullner walking along the side of the road. According to Deputy Boots' testimony, he suspected Wullner had car trouble and decided to offer assistance. Accordingly, Deputy Boots turned his patrol car around and began to approach Wullner. Deputy Boots testified that as he turned his patrol car around, however, he saw Wullner run into a roadside ditch. After locating Wullner in the weeds, Deputy Boots cajoled him back to the road, concluded that Wullner was intoxicated, and arrested him for public intoxication. Personal items belonging to Wullner which were seized and inventoried following his arrest included a set of car keys used to connect him with the car that hit the decedent in this case. As a constitutional challenge is being urged by Wullner, we review the evidence de novo. *State v. Hilleshiem,* 291 N.W.2d 314, 316 (Iowa 1980).

 The fourth amendment requires that an officer have "reasonable cause" to stop an individual for investigatory purposes. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). An officer must have specific and articulable cause to support a reasonable belief that criminal activity may have occurred.

*State v. Conger,* 375 N.W.2d 278, 279 (Iowa Ct. App. 1985). The record must disclose objective facts available to the officer to justify the stop under the circumstances. *State v. Losee,* 353 N.W.2d 876, 878 (Iowa Ct.App.1984). The test is *not* the officer's subjective theory. *State v. Peck,* 329 N.W.2d 680, 686 (Iowa Ct.App. 1982). Mere suspicion or curiosity is not sufficient to justify the stop for investigatory purposes. *State v. Donnell,* 239 N.W.2d 575, 577 (Iowa 1976). Circumstances for an investigatory stop exist where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot. *Peck,* 329 N.W.2d at 683.

■ We think that, in the present case, the stop was constitutional under *Terry* and its progeny and that any evidence seized as a result was allowable into evidence. The gist of Deputy Boots' rationale in support of his stopping of Wullner was the fact that Wullner ran into the roadside ditch after Deputy Boots turned his patrol car around and began to approach him. Our supreme court has said that a person might reasonably believe that one seen fleeing to avoid apprehension might be more apt to be guilty than one who does not. *State v. Barr,* 259 N.W.2d 841, 842 (Iowa 1977). The United States Supreme Court has noted that deliberately-furtive actions and flight at the approach of law officers are strong indicia of mens rea. *Sibron v. New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 937 (1968). Our review of the totality of the circumstances persuades us that Deputy Boots' actions were constitutionally permissible and that the district court was correct in overruling the motion to suppress.

Wullner's next contention is that the district court erred in admitting into evidence certain statements he made during a custodial interrogation. During the questioning, Detective Fuller told Wullner that he was suspected of hitting a person on a bicycle. Wullner responded by asking for the victim's name, address, and whether the person was dead. Later, when asked how it felt to have killed someone, Wullner replied, "how would you feel." Detective Fuller's testimony relating these statements was allowed into evidence over objection as admissions by a party opponent.

■ Wullner contends that these statements are equivocal responses to custodial interrogation and should be treated as tacit admissions. As tacit admissions are not admissible against criminal defendants by virtue of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as interpreted by *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and *State v. Kelsey,* 201 N.W.2d 921 (Iowa 1972), these responses should likewise be inadmissible. We disagree.

■ *Doyle* stands for the proposition that silence, in the face of official accusation, is "insolubly ambiguous." Such silence may imply, as the tacit admissions theory in this state once held, an acquiescence to the State's accusations. An equally possible implication is that the criminal defendant has decided to invoke his or her constitutional right to remain silent. Because of this "insolubl[e] ambigu[ity]," due process does not allow the silence to be admissible against the accused. *Doyle,* 426 U.S. at 422, 96 S.Ct. at 2245, 49 L.Ed.2d at 98. We do not think the same type of ambiguity is present when an accused elects to respond to a custodial interrogation. Whatever the proper understanding of Wullner's statements, we can, in no way, interpret them as an attempt at invoking his right to remain silent. There may be ambiguity involved in statements made by accuseds in this context, but we do not think that ambiguity involves the fifth amendment unless a reasonable interpretation of the statement illuminates it as an attempt to seek the protection of the constitution. We do not think that such an interpretation is conceivable here. Beyond this, the ambiguous nature of the statements is an issue best left to the jury. *United States v. Creamer,* 555 F.2d 612, 617, (7th cir), *cert. denied,* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977).

Accordingly, we reject Wullner's argument. *See Commonwealth v. Jefferson,* 430 Pa. 532, 536–37, 243 A.2d 412, 414–15 (1968); *State v. Morrill,* 197 Conn. 507, 527, 498 A.2d 76, 93 (1985).

■ Wullner next argues that there is insufficient record evidence in support of the guilty verdict on the involuntary manslaughter charge. In particular, Wullner contends that the State failed to provide sufficient evidence that his drunk driving was the proximate cause of the decedent's death. Our rules for reviewing the sufficiency of the evidence were outlined in *State v. McFadden,* 320 N.W.2d 608, 614 (Iowa 1982), as follows:

> [T]he evidence is viewed in the light most favorable to the State; that all of the evidence must be considered, and not just that which supports the verdict; that the verdict must be upheld if supported by substantial evidence; and that substantial evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

Additionally, we note that direct and circumstantial evidence are equally probative. *State v. Schrier,* 300 N.W.2d 305, 308 (Iowa 1981). In order to sustain an involuntary manslaughter conviction based upon the public offense of drunk driving, it is necessary to show a direct causal connection between the drunk driving and the death. *McFadden,* 320 N.W.2d at 612. This causal relationship is identical to ordinary proximate cause principles contained in our tort law. *Id.* at 613.

■ The evidence produced by the State includes testimony from a number of persons who had seen Wullner at a local tavern earlier on the evening of the accident. This testimony was to the effect that Wullner had been drinking at the tavern from approximately 4:30 p.m. until approximately 9:00 p.m. The testimony, viewed in the light most favorable to the State, was that Wullner had consumed as many as fifteen twelve-ounce cans of beer that evening. One witness testified that Wullner seemed intoxicated when she saw him that evening. Duputy Boots arrested Wullner

for public intoxication approximately one hour after the decedent's body was found. The record also contains substantial evidence linking Wullner to the car involved in the accident. We conclude that the record contains sufficient substantial evidence in support of the jury's finding of proximate cause.

■ Finally, Wullner contends, and the State agrees, that the sentence imposed upon him for the conviction of a third offense of operating a motor vehicle while intoxicated was an illegal sentence. This sentence was based, in part, upon the consideration of a deferred judgment Wullner received on a similar offense in 1978. The Iowa Supreme Court held in *State v. Soppe,* 374 N.W.2d 649, 653 (Iowa 1985), that the 1984 amendment to Iowa Code section 321.281 which allowed deferred judgments to be used for the purpose of enhancing the penalty for subsequent offenses was not to be retroactively applied. Accordingly, we remand this case for entry of an amended judgment of guilty of operating a motor vehicle while under the influence of alcohol, second offense, and for resentencing of Wullner accordingly. *See* Iowa Code sections 321.281(2)(b) (1985) and 903.1(2) (1985).

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.