OPINION
On April 27, 1997, appellee, Nancy Weitbrecht, was operating a motor vehicle when she went left of center and struck a vehicle driven by Marline Carroll. Killed in the collision were two passengers in appellee's vehicle, Donald Greer and appellee's husband, Merlyn Weitbrecht, and one passenger in Ms. Carroll's vehicle, Ms. Carroll's mother, Vera Carroll.
On July 17, 1997, the Holmes County Grand Jury indicted appellee on two counts of involuntary manslaughter in violation of R.C. 2903.04(B) for the deaths of Vera Carroll and Donald Greer. Said indictment was based upon any of four minor misdemeanor traffic offenses, operating a motor vehicle without reasonable control in violation of R.C. 4511.202, failing to operate a motor vehicle on the right half of the roadway in violation of R.C.4511.25(A), operating a motor vehicle left of center in violation of R.C. 4511.29 and failing to obey hazardous zone markings in violation of R.C. 4511.31.
On November 5, 1997, appellee filed a motion to dismiss the indictment claiming violations of the cruel and unusual punishment and equal protection clauses of the United States and Ohio Constitutions. A hearing was held on November 18, 1997. By judgment entry filed November 26, 1997, the trial court granted said motion based upon the cruel and unusual punishment clauses of the United States and Ohio Constitutions.
Appellant, the State of Ohio, filed a notice of appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 OHIO'S INVOLUNTARY MANSLAUGHTER STATUTE, R.C. 2903.04(B) AS APPLIED IN THIS CASE VIOLATES NEITHER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION'S NOR ARTICLE 1 SECTION 9 OF THE OHIO CONSTITUTION'S BAN ON CRUEL AND UNUSUAL PUNISHMENT.
 I
Appellant claims the trial court erred in dismissing the indictment. By judgment entry filed November 26, 1997, the trial court found the charge of involuntary manslaughter was grossly disproportionate to the facts and therefore was unconstitutional as cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Section 9, Article I of the Ohio Constitution. We find the trial court's assessment of the issues presented to be correct.
R.C. 2903.04 governs involuntary manslaughter. Subsections (B) and (C) specifically state as follows:
 (B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemeanor.
 (C) Whoever violates this section is guilty of involuntary manslaughter. * * * Violation of division (B) of this section is a felony of the third degree.
Pursuant to R.C. 2929.1(A)(3), the penalty for a felony of the third degree is a prison term of "two, three, four, or five years." The underlying minor misdemeanors sub judice included operating a motor vehicle without reasonable control (R.C.4511.202), failing to operate a motor vehicle on the right half of the roadway [R.C. 4511.25(A)], operating a motor vehicle left of center (R.C. 4511.29) and failing to obey hazardous zone markings (R.C. 4511.31). The specific language of these statutes make them strict liability offenses therefore there was no need to prove a culpable mental state. Furthermore, the parties stipulated "there is no evidence of criminal recklessness or negligence." November 17, 1997 T. at 4.
The Supreme Court of the United States and the Supreme Court of Ohio have both recognized that legislation is generally presumed to be constitutional:
 In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is per se constitutional.
 Solem v. Helm (1983), 463 U.S. 277, 290.
 Any reasonable doubt regarding the constitutionality of a legislative enactment must be resolved in favor of the General Assembly's power to enact the law.
 State v. McDonald (1987), 31 Ohio St.3d 47, 48.
In Solem at 292, the Supreme Court of the United States noted "courts are competent to judge the gravity of an offense, at least on a relative scale. In a broad sense this assumption is justified, and courts traditionally have made these judgments — just as legislatures must make them in the first instance." As a result of this inherent authority of the judiciary, the Solem
court held "courts should be guided by objective factors" and set forth a three part test for review of sentences under theEighth Amendment to the United States Constitution:
 First, we look to the gravity of the offense and the harshness of the penalty. * * * Second, it may be helpful to compare the sentences imposed on other criminals in the same jurisdiction. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. * * * Third, courts may find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions.
 Solem at 290-291.
In reviewing sentences under the scrutiny of theEighth Amendment, the Solem Court at 293 has recognized some very basic tenants, "[f]ew would dispute that a lesser included offense should not be punished more severely than the greater offense" and "[m]ost would agree that negligent conduct is less serious than intentional conduct."
In Harmelin v. Michigan (1991), 501 U.S. 957, the Supreme Court of the United States refined the Solem opinion to an analysis of "gross disproportionality" between sentence and crime. In a concurring opinion, Justice Kennedy stated as follows:
 Solem is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. * * * A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analysis are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. * * * The proper role for comparative analysis of sentences then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime.
Pursuant to Harmelin, the first step in Eighth Amendment constitutional review is the analysis of whether the crime vis vis the sentence is grossly disproportionate. While this court has never addressed the issue raised in this appeal, four other appellate districts have. In State v. Garland (December 16, 1996), Fayette App. No. 96-05-01, unreported, and State v.Stanford (August 30, 1996), Trumbull App. No. 95-T-5358, unreported, the Eleventh and Twelfth District Courts of Appeals found the involuntary manslaughter statute [R.C. 2903.04(B)] to be constitutional as applied to minor misdemeanor traffic offenses.[1] In State v. Campbell (January 24, 1997), Montgomery App. No. 15786, unreported, and State v. Shy (June 30, 1997), Pike App. No. 96-CA-587, unreported, the Second and Fourth District Courts of Appeals found (under very similar circumstancessub judice) minor misdemeanor traffic offenses as predicate offenses to involuntary manslaughter to be grossly disproportionate.
Upon review, we are of the opinion our brethren from the Second and Fourth Districts in Campbell and Shy, respectively, were correct in their analysis of the question posed today. We base this conclusion on the following analysis.
Appellant argues our review should center on the deaths of the three innocent individuals as opposed to the emphasis on the potential penalty should appellee be convicted. We find this argument to be contra to the dictates of Solem. Solem
specifically emphasizes it is the sentence verses the crime committed that must be subjected to judicial scrutiny.
The threshold analysis is whether the minor misdemeanor traffic offenses committed and the potential sentence (two, three, four, or five years imprisonment) are grossly disproportionate. Our initial comparison requires such a conclusion. We must now review the issue under the three part test set forth in Solem.
First, we look to the gravity of the offenses and the harshness of the penalty. As stipulated by the parties, the minor misdemeanor traffic offenses committed require no culpable mental state. Regardless of the lack of culpability, an accused has no defense. Because of the specific language of the involuntary manslaughter statute, the state need not prove the minor misdemeanor offense was the sole or only cause of the death.[2] Simply put, the state is required to only prove the accident happened. Strict liability statutes are generally less serious than criminal acts predicated on culpability. This analysis in no way diminishes the tragic loss of the three individuals killed sub judice. We all recognize the value and preciousness of each life taken.
Second, we compare the penalties of other crimes. A cursory review of the Ohio criminal homicide statutes demonstrates homicide is divided by varying degrees of culpability, and all the homicide statutes provide for a degree of culpability save the issue sub judice. The most serious homicide offense is the taking of a life with prior calculation and design (penalty-death) to the least serious, negligent homicide and vehicular homicide, misdemeanors of the first degree (penalty-six months imprisonment). Appellee, with no culpable mental state, would be punished more severely than an individual charged with negligent homicide or vehicular homicide which require some degree of culpability.
Third, we compare the penalty for commission of the same crime in other jurisdictions. As stated in Campbell, most jurisdictions have turned away from an "unlawful act" scenario to a "criminal negligence" scheme:
 A survey of the states that have retained unlawful act involuntary manslaughter statutes suggests that few if any would permit a felony conviction based on a strict liability minor misdemeanor. In Iowa, Involuntary Manslaughter may be predicated on a `public offense,' but the common law construction of the statute requires the state to prove that the motor vehicle operator was in wanton and reckless disregard of the safety of others. Iowa Code Ann. 707.5(1); State v. Conner (Iowa 1980), 292 N.W.2d 682, 686. Louisiana predicates its Involuntary Manslaughter charge on `intentional' misdemeanors. La.Rev.Stat. 14:31. New Mexico's courts have constructed the Involuntary Manslaughter statute to require a showing of criminal negligence during an unlawful act. N.M.Stat.Ann. 30-2-3; State v. Yarborough
(1995), 120 N.M. 669, 905 P.2d 209, 214 (`[W]hen used as the basis for involuntary manslaughter, a petty misdemeanor is elevated to a felony and as such requires a showing of criminal negligence.') Similarily, Wyoming's Involuntary Manslaughter statute requires a showing that the unlawful act was `reckless.' Wyo.Stat.Ann 6-2-105. Georgia does not permit prosecution for Involuntary Manslaughter based solely upon traffic law violations, but instead prosecutes under its Homicide By Vehicle statute, first-time violations of which warrant a misdemeanor conviction. Ga. Code Ann. 40-6-393 (formally 68A-903).
 In sum, we have not identified any jurisdiction that would permit a felony conviction for Involuntary Manslaughter premised on a strict liability minor misdemeanor.
Based upon this analysis, we are convinced, given the facts stipulated to sub judice, when there is no evidence of criminal culpability but merely bad driving or a simple lapse from good driving judgment, the punishment of the involuntary manslaughter statute is grossly disproportionate to the underlying minor misdemeanor traffic offenses and it shocks the sense of justice of the community.
Although we are mindful of the seriousness of operating a motor vehicle in a learned, judicious manner, we cannot say the community cries out for the possibility of a five year prison sentence in the event of a minor traffic violation. It is quite another issue when there is initial bad driving (criminal negligence or recklessness) or a violation of a misdemeanor where there is a possibility of imprisonment.
Based upon the trial court's analysis and the Campbell andShy decisions, we find the trial court did not err in dismissing the indictment.
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Ashland County, Ohio is hereby affirmed.
By Farmer, P.J., Reader, J. and Wise, J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Holmes County, Ohio is affirmed.
[1] The Stanford court found insufficient facts in the record to do a "gross disproportionality" analysis.
[2] R.C. 2903.04(B) states "[n]o person shall cause the death of another * * * as a proximate result. In Ohio law, there may be more than one proximate cause.