STATE of Iowa, Appellee,

v.

Edward R. OSBORN, Appellant.

No. 84–181.

Supreme Court of Iowa.

May 22, 1985.

John J. Carlin of John J. Carlin, P.C., Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen and Douglas F. Staskal, Asst. Attys. Gen., for appellee.

McCORMICK, Justice.

Defendant Edward R. Osborn was convicted in a trial to the court on four counts of fraudulent practice in the second degree in violation of Iowa Code sections 422.25(5), 714.8(10) and 714.10(1) (1979). The charges arose from defendant's alleged willful failure to file state income tax returns and pay state income taxes for 1978 and 1979. In this appeal he contends that the trial court erred in convicting him despite finding he had no intent to defraud and in holding that the term "willfully" as used in section 422.25 requires only a showing of intentional violation of a known duty.

In material part section 422.25(5) provides:

Any person required to ... pay any tax, or to make, sign or file any return or supplemental return, who ... willfully fails to pay such tax, ... or make, sign, or file such return, at the time or times required by law, shall be guilty of a fraudulent practice.

Section 714.8(10) provides that a person who does any act declared by any other section of the Code to be a fraudulent practice is guilty of a fraudulent practice. Section 714.10 provides in material part:

Fraudulent practice in the second degree is the following:

1. A fraudulent practice where the amount of money or value of property or services involved exceeds five hundred dollars but does not exceed five thousand dollars.

In the present case the parties stipulated that defendant, who is a lawyer, was required to file Iowa income tax returns for 1978 and 1979, that he did not file returns or pay the tax on time for those years, and that he owed more than $500 but less than $5,000 in state income taxes for each of those years. Defendant urged a defense of diminished responsibility. He offered evidence that he was suffering from severe depression at the times involved, that the condition caused him to procrastinate and avoid stressful situations, that he had no intention to deceive or gain by failing to file tax returns and pay taxes in timely fashion, and that he had no malicious intent.

The trial court made certain relevant findings of fact that are not challenged:

15. The evidence is clear that defendant was certainly capable of performing in a competent manner his duties as an attorney prior to the beginning of his emotional problems.

16. Defendant knew of all applicable deadlines and filing requirements for his 1978 and 1979 tax returns and was aware of the payment deadlines.

17. The court specifically finds that the defendant had no evil motive, or intent to defraud the State of Iowa by not filing the returns or paying the tax.

18. The court finds that the defendant was aware of his duty to file a tax return in 1978 and 1979 and to pay the tax due and that he did not do so.

19. The failure to file and to pay the tax due was not accidental or inadvertent.

Based on the stipulated facts and these findings, the trial court found defendant guilty as charged. In doing so, the court held that the term "willfully" in section 422.25(5) "requires only a general intent as it relates to the failure to file a tax return and/or to pay the tax owed." The court added: "All that is required is that there be an intentional violation of a known legal duty."

Defendant's only contentions and arguments on appeal concern his claims that the court could not lawfully have convicted him after finding that he lacked intent to defraud and that the court erred in equating willfulness with an intentional violation of a known duty. He does not contend or argue that the court's degree-of-guilt finding was incorrect or that the amount of money "involved" did not meet the degree-of-guilt standard in section 714.10(1).

I. *Absence of intent to defraud.* Before adoption of the present criminal code, section 422.25(5) provided that the described offenses were indictable misdemeanors, punishable by imprisonment in the county jail not to exceed one year, by a fine not exceeding $2500, or both. *See* Iowa Code § 422.25(5) (1975). During the comprehensive statutory criminal law revision effective January 1, 1978, the present provision that the offender "shall be guilty of a fraudulent practice" was substituted for the prior penalty language. *See* § 422.-25(5) (Supp.1977).

Defendant asserts that a necessary consequence of designating the crimes in section 422.25(5) as fraudulent practices is to make intent to defraud an essential element of the offenses charged. We do not agree. We start with the premise that changes made by revision of a statute will not be construed as altering the law unless

the legislature's intent to accomplish a change in its meaning is clear and unmistakable. *Emery v. Fenton*, 266 N.W.2d 6, 10 (Iowa 1978). The revision of section 422.25(5) clearly and unmistakably changed the penalty provision but not the elements of the offenses.

Defendant's contention depends on an argument that the labeling of the offenses as fraudulent practices necessarily converted them to specific intent crimes. One basic flaw in this argument is that even the offenses specified as fraudulent practices in section 714.8 do not all require proof of intent to defraud. *See* Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 383–84 (1979–1980).

 We find no basis for holding that the General Assembly added the element of intent to defraud to the offenses charged in this case merely by designating the offenses as fraudulent practices. We hold that the designation was made for penalty purposes only.

II. *The meaning of willfully.* Defendant's second contention is that the word "willfully" contained in section 422.25(5) should be interpreted to require proof of evil motive or intent rather than a mere knowing failure to comply with the filing and payment provisions of the income tax statutes. The trial court rejected this contention and held that willfulness was established by proof of a voluntary and intentional violation of a known legal duty. The court's findings were consistent with this view of the law.

The same standard of willfulness has been adopted by federal courts in interpreting analogous provisions of federal revenue laws. *See, e.g., United States v. Pomponio*, 429 U.S. 10, 12–13, 97 S.Ct. 22, 23–24, 50 L.Ed.2d 12, 15–16 (1976); *United States v. Bishop*, 412 U.S. 346, 360–61, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941, 949 (1973); *United States v. Rifen*, 577 F.2d 1111, 1113 (8th Cir.1978); *United States v. Pallan*, 571 F.2d 497, 501 (9th Cir.), *cert. denied*, 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978); *United States v. Dillon*, 566 F.2d 702, 703–04 (10th Cir.1977), *cert. denied*,

435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (1978).

 Defendant suggests that this interpretation of the meaning of willfulness is inconsistent with interpretations under other statutes in *State v. Aldrich*, 231 N.W.2d 890, 894 (Iowa 1975) ("an intentional act inconsistent with good faith and good intentions") and *Huston v. Huston*, 255 Iowa 543, 548, 122 N.W.2d 892, 896 (1963) ("not only intentionally or deliberately done, but with a bad or evil purpose, as in violation of law"). Assuming these interpretations are different, the standard employed by the trial court is consistent with interpretations of the term in other cases. *See, e.g., State v. Dunn*, 199 N.W.2d 104, 107 (Iowa 1972) ("'willfully' means purposely, deliberately, intentionally"); *State v. Wallace*, 259 Iowa 765, 773, 145 N.W.2d 615, 620 (1966) ("'willfully' ordinarily means intentionally, deliberately or knowingly, as distinguished from accidentally, inadvertently or carelessly"). The interpretation obviously depends in part on the statutory context. *See Eggman v. Scurr*, 311 N.W.2d 77, 78 (Iowa 1981).

 Pursuaded by the interpretation given the term by the federal courts under analogous statutes, we believe the term has its ordinary meaning in section 422.-25(5). We hold that the trial court adopted the correct willfulness standard in the present case.

 The court did not err in finding defendant guilty based on knowing and intentional violations of known legal duties.

AFFIRMED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

Because I believe the district court and this court's majority incorrectly interpret and apply the *mens rea* elements of the offenses for which defendant was charged and convicted, I respectfully dissent. I believe the matters urged in this dissent are involved in the appeal and required to be

considered as a result of the defendant's contentions that the district court's finding of fact number 17 precludes a determination of guilt.

The defendant is a lawyer. It is undisputed that he was aware of the filing and payment deadlines for his individual Iowa income taxes for the years in question. With respect to his 1978 Iowa income tax return, he filed a request asking that the time for filing be extended from April 30, 1979 to May 31, 1979. At or about that same time, he made a payment of $600 against his 1978 tax liability which ultimately was established to be a substantially greater amount. He did not file his 1978 tax return, pay any more toward his 1978 tax liability, file his 1979 tax return, or pay any of his 1979 tax liability until May 29, 1981. The latter date was several months after the commencement of an investigation against defendant by the department of revenue.

Considerable evidence was presented at trial that, during the period of time involved in defendant's defalcations, he had become extremely lethargic and his professional work habits had become erratic. A psychiatrist testified at the trial that he had diagnosed defendant's condition as major depressive recurrent. As a result of such condition, it was the opinion of this witness that defendant lacked volition to accomplish the preparation of his tax returns, either through his own efforts or by marshalling the required information for another tax return preparer.

The district court's findings of fact 15–19, quoted in full by the majority, indicate rather clearly the rationale under which that court arrived at its determination of guilt. Further discussion of these findings is warranted. Finding of fact number 15 is largely biographical in that it deals with defendant's volition at some time prior to the time his emotional difficulties commenced. The finding does not contribute significantly to the issue of state of mind at the time of the offenses. Finding of fact 16 and finding of fact 18 merely repeat the stipulated facts with respect to defend-

ant's awareness of the filing deadlines and his failure to file the required returns or pay the required taxes. Finding of fact number 17 and finding of fact number 19, when considered in conjunction with each other, strongly suggest that the district court believed that "willfully" for purposes of the *mens rea* element of section 422.-25(5) means other than accidentally or inadvertently. I submit that this represents an incomplete assessment of the term "willfully" as employed in this criminal statute.

We have recognized that the elements of intent or knowledge necessary with respect to a particular offense is to be determined within the context of the particular statute in connection with its manifest purpose and design. *Eggman v. Scurr*, 311 N.W.2d 77, 78 (Iowa 1981). Different contexts have produced different shadings on the meaning of the word "willfully." *State v. Aldrich*, 231 N.W.2d 890, 894 (Iowa 1975) ("an intentional act inconsistent with good faith and good intentions") and *Huston v. Huston*, 255 Iowa 543, 548, 122 N.W.2d 892, 896 (1963) ("not only intentionally or deliberately done, but with a bad or evil purpose, as in violation of law").

To define "willfully" as "a voluntary and intentional violation of a known legal duty," as done by the district court and this court's majority is to overly generalize its meaning. As a result, the true meaning of the majority's definition can only be conveyed by its application to particular factual settings. To the extent that the majority has approved a definition, it is incumbent upon the court to justify the result of the present case by application of that definition to the facts of the case.

The application of the definition which the majority approves requires the State to establish that the omissions involved were "voluntary." The district court's findings do not speak directly to that issue. The issue of whether the acts in question were "voluntary" was only considered by the district court to the extent it found that defendant's omissions were neither accidental nor inadvertent. I submit that, within the context of the criminal statute involved,

the concept of volition with respect to failure to perform an act involves more than a knowing failure to perform the act. It also embodies the making of a conscious choice not to perform the particular act involved—a choice unhampered by insurmountable obstacles. Pure inertia should not be viewed as a voluntary act in this sense.

In the present case, on the issue of whether defendant's failure to file tax returns was willful, the district court never made a finding of fact on the volitional issue which was injected into the case as a result of defendant's expert testimony. A finding by the court that defendant consciously chose not to file the returns may not be implied from the finding that his actions did not occur because of accident or inadvertence. Moreover, a determination that defendant did act with volition is somewhat inconsistent with the district court's finding that "the defendant had no evil motive, or intent to defraud." The issue presented is one of fact which should have been specifically addressed by the district court.[1] On the issue of defendant's willful failure to pay the required tax, I believe that, as observed by the Supreme Court in *Spies v. United States*, 317 U.S. 492, 498, 63 S.Ct. 364, 367–68, 87 L.Ed. 418, 422 (1943), a traditional aversion to imprisonment for debt requires a court to find "some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer," in order to support a conviction. No consideration

was given in the written decision of the district court to the ability of the defendant to make timely payment of the tax owed.

Even if I could accept the majority's determination concerning the elements of the basic criminal statute, a different test for the *mens rea* element is mandated in regard to the state-of-mind requirement for determining degree of guilt. In determining degrees of guilt in fraudulent practice offenses, the legislature has established a graduated scale of penalties depending upon "the amount of money or value of property or services involved." Section 714.10 provides:

Fraudulent practice in the second degree is the following:

1. A fraudulent practice where the amount of money or value of property or services involved exceeds five hundred dollars but does not exceed five thousand dollars.

2. A fraudulent practice where the amount of money or value of property or services involved does not exceed five hundred dollars by one who has been convicted of a fraudulent practice twice before.

Fraudulent practice in the second degree is a class "D" felony.

The meaning of the term "involved" as employed in the various statutes defining degrees of fraudulent practice has never been determined by this court. Commentators in the area are in apparent disagreement over the meaning to be attributed this

---

1. The district court's decision indicates that the reason for its failure to deal more fully with the volitional elements of defendant's conduct may have been its belief that this constituted a "diminished responsibility" defense which is not available in a so-called "general criminal intent" offense. This may have been invited by our statements in *Veverka v. Cash*, 318 N.W.2d 447, 449 (Iowa 1982); *Long v. Brewer*, 253 N.W.2d 549, 557 (Iowa 1977); and *State v. Barney*, 244 N.W.2d 316, 318 (Iowa 1976). The most that may be attributed to the statements contained in those cases is that evidence concerning a defendant's inability to form a specific intent provides no defense to a criminal charge which does not require proof of that intent. Where a particular state of mind or mental condition is an element of a crime, a defendant, in defend-

ing against the charge, is free to offer competent evidence that he or she was incapable of achieving that state of mind or mental condition. To hold otherwise, would deny the defendant the right to present evidence on a material element of the charge. In the present case, defendant's expert testimony indicated that he was in a state of depression which caused a lack of volition to file the required tax returns or pay the required taxes when due. Under a fair interpretation of the standard of "voluntary and intentional violation of a known legal duty," this was material evidence on an element of the charges, *i.e.*, whether the omissions were voluntary. The factual issues which were engendered by this evidence should have been decided by the district court.

term. In J. Yeager & R. Carlson, *Iowa Criminal Law and Procedure* § 330 (1979), it is suggested that, based on the legislative history, the amount "involved" means the actual value of property or services obtained by the perpetrator or lost to the victim. In contrast to the views of Yeager & Carlson, Dunahoo, *The New Iowa Criminal Code* 29 Drake L.Rev. 237, 386–87 (1980), suggests that no actual misappropriation of money, goods, or services need take place in order to establish the value "involved" element.

Whatever the proper interpretation of "involved" in cases involving acts of fraudulent practice described within the four corners of section 714.8, it is apparent that the Yeager & Carlson concept of victim deprivation does not work well in determining degrees of guilt for failure to file tax returns or to timely remit tax payments when due. The gravamen of the offense is failure to file the returns or pay the tax on time. Nor is it consistent with a rational determination of relative culpability in such situations to equate amounts "involved" with the amount of tax ultimately found to be owing when the returns are filed late or the taxes untimely paid.[2] When such omissions are willful but without an intent to defeat collection of the tax, the measure of culpability is not fairly reflected by the offender's tax bracket.[3]

Such a means of measuring culpability can lead to particularly absurd results when certain of the other offenses embodied in section 422.25(5) are considered. That statute also makes it a crime to willfully file false or fraudulent tax returns. If the amount "involved" for purposes of determining degrees of offense under sections 714.9–.13 is, in cases under section 422.25(5), based on the amount of tax owed, one intentionally filing a late, but accurate, return or making a late payment in the proper amount of tax can be found guilty of a more serious offense than one filing a false and fraudulent return on time. This is true even though in the former situation the offender has no intent to defeat payment of the tax and in the latter situation the offender acts with the express purpose of defeating payment of the tax.

This court has recognized its responsibility to interpret statutes which grade culpability in a sensible manner. *State v. Conner,* 292 N.W.2d 682, 684 (Iowa 1980). In so doing, it is necessary at times to imply a requirement for a particular state of mind in determining the definition of a criminal offense. *Id.* The criminal law should grade its penalties in proportion to the harm achieved or sought to be achieved. In the present case, I submit that in determining amount "involved" for purposes of establishing degrees of guilt under sections 714.9–.13, proof of an intent to defeat payment of tax in the specified amount should be required. As one commentator has observed in an analogous context, "absent such a dividing line in the formula for criminal liability, venial 'sins' can be transformed into crimes, even though the defendant's conduct had only a remote causal relationship to the victim's loss."[4] This principle is equally applicable to attempts to transform minor crimes into major ones through use of an inapt formula for gradation of offenses.

Under the interpretation which I find should be made of the applicable statutes, the district court's finding of fact number 17 is facially inconsistent with its ultimate determination of defendant's guilt. For the reasons I have indicated, I would vacate the judgment and sentence imposed

---

**2.** Even under the concept of a voluntary and intentional violation of a known legal duty which the majority espouses, a showing of knowing failure to pay a specific amount would seem to be required.

**3.** Because the amount of tax owed and unpaid is the gravamen of the failure to pay counts asserted against the defendant, the use of that circumstance as an element of the failure to file counts causes the former offenses to be included with-

in the latter. As a result, separate convictions and sentences on each would appear to run afoul of the double punishment limitations of the federal constitution. *See State v. Whitfield,* 315 N.W.2d 753, 755 (Iowa 1982).

**4.** Coffee, *From Tort to Crime,* 19 Amer.Crim.L. Rev. 117, 165 (1981). *See also* Robinson & Grall, *Element Analysis in Defining Criminal Liability,* 35 Stan.L.Rev. 681, 709 (1983).

against defendant and remand the case to the district court for further consideration of those additional elements which I believe the statutes require to be established beyond a reasonable doubt.