# IN THE COURT OF APPEALS OF IOWA

No. 15-0638
Filed December 21, 2016

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**DENNIS BROUSE,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Dennis Brouse appeals his conviction for fraudulent practice in the first degree on retrial. **REVERSED AND REMANDED.**

Angela L. Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Dennis Brouse appeals his conviction for fraudulent practice in the first degree. This appeal is from Brouse's second trial on this same charge. He argues his conviction must be reversed because: (1) it violates double jeopardy, (2) it was barred by the statute of limitations, (3) the district court improperly instructed the jury, and (4) the district court abused its discretion in making various evidentiary rulings. For the reasons stated below, we reverse the conviction and remand for a new trial.

## I.     Background Facts and Proceedings

This court already established the background facts relevant to this case in Brouse's prior appeal:

> In 2007 the Iowa legislature enacted the Iowa Film, Television, and Video Project Promotion Program (Film Program). The Film Program was created to bring filmmakers and television producers from other locations to Iowa with the hope they would spend money in Iowa and grow the economy. The program, administered by the Iowa Film Office, offered transferable tax credits to producers and investors for qualified expenditures from Iowa-based businesses. Tom Wheeler ran the Iowa Film Office and assisted filmmakers and television producers with tax credits. Filmmakers and producers had to apply to the Iowa Film Office in order to be approved for the tax credits. After the Iowa Film Office approved a film project, the filmmaker or producer would provide a list of expenditures to the Iowa Film Office. The Office would then review the expenditures and issue a tax certificate. The tax certificate could be used to reduce a tax liability owed to the State of Iowa. If the filmmaker or producer did not owe Iowa taxes, the tax credit could be sold to a third party that did have tax liability to the State.
>
> Dennis Brouse had developed a television program about horses for Nebraska Educational Telecommunications (NET). After failing to find enough cash funding, Brouse and NET parted ways. Brouse contacted Wheeler about the possibility of his television program obtaining tax credits from the State of Iowa. Brouse then moved his corporation (Changing Horses) and his television program (*Saddle Up*) to Iowa. Brouse hired Chad Witter, a certified

public accountant, to help with the tax credits. Wheeler believed Witter had a vast knowledge of the Film Program.

The Iowa Film Office had preapproved the use of "in-kind" exchanges—exchanges for services, such as advertising or sponsorships, or goods, but no cash exchange—as qualified expenditures. Additionally, the Iowa Film Office allowed a pass-through corporate structure, where an Iowa corporation is created as the business entity to allow non-Iowa sponsorships to qualify as expenditures under the Film Program. These expenditures would be submitted to the Iowa Film Office and the filmmaker or producer would receive tax credits for approximately half of the expenditures. . . .

. . . .

Brouse submitted many purchases as qualified expenditures relevant to this case. One such expenditure was submitted as a claim of an in-kind exchange. Brouse purchased a . . . camper from Shirley and Wayne Weese. The Weeses offered Brouse the trailer for $10,500 and he paid them $10,500 in cash. The purchase agreement stated the purchase price was $21,000 and the Changing Horses expenditure sheet, as submitted to the Iowa Film Office, claimed a $22,500 qualified expenditure. The Weeses testified . . . Brouse asked them to sign the $21,000 purchase agreement to facilitate tax credits. Brouse also asked Shirley Weese to tell the person calling from the Iowa Film Office that the trailer was purchased for $21,000. The audit tie-out sheet (a document linking the expenditure claims to specific records from the production accountant) showed Brouse paid in cash $10,500 and in services $10,500 to the Weeses. The Weeses' restaurant was subsequently advertised in *Saddle Up*. However, the Weeses did not know their restaurant would be advertised and testified that they did not agree to be paid in advertising.

The Iowa Attorney General charged Brouse and Witter with fraudulent practice in the first degree, theft in the first degree, and ongoing criminal conduct. Brouse moved to sever the defendants and was later tried alone. After receiving a bill of particulars, Brouse filed a motion to dismiss the charges. The Attorney General amended the trial information and bill of particulars. The district court denied Brouse's motion to dismiss. . . . The jury returned a general verdict finding Brouse guilty of first-degree fraudulent practice and not guilty of theft and ongoing criminal conduct. Brouse filed a motion for new trial, which was denied. Brouse appealed his conviction.

*State v. Brouse*, No. 12-1076, 2014 WL 1714969, at *1–2 (Iowa Ct. App. Apr. 30, 2014).

In Brouse's previous appeal, he argued, among other things, there was insufficient evidence to convict him of joint criminal conduct, an alternative theory of fraudulent practice charged by the State. *Id.* at *3. On appeal, the State conceded the joint criminal conduct theory could not have been the basis for the jury's verdict. *Id.* We examined the joint criminal conduct jury instruction and found it "was so confusing that we are not confident the jury was able to parse through the unclear elements and properly assess Brouse's guilt under that theory." *Id.* at *5. Thus, we reversed Brouse's conviction for fraudulent practice in the first degree, concluding "it was not possible for the jury to find sufficient evidence to convict pursuant to a general verdict that implicated [an erroneous] joint criminal conduct instruction." *Id.* The State filed an application for further review, which our supreme court denied.

On August 18, 2014, Brouse filed a motion for entry of judgment of acquittal, which the district court denied, concluding "a new trial is permitted when a conviction is reversed due to error at trial in instructing the jury" and, alternatively, "retrial is permitted because the verdict is general and other theories of guilt were presented that could have supported the verdict (or that, at least, the court of appeals did not say could not have supported it)." Brouse sought discretionary review of the court's order, which our supreme court denied.

On November 10, the State amended the trial information, charging Brouse with one count of fraudulent practice in the first degree, in violation of Iowa Code section 15A.3 (2007), specifically alleging "the defendant requested Wayne and/or Shirley Weese to sign a 'Bill of Sale' stating that the price of the

trailer he bought from them was twice the actual price, in order to double the value of tax credits he received for it."

On January 14, 2015, Brouse filed a renewed motion for entry of judgment of acquittal and motion to dismiss, which was denied. On January 23, the State filed a motion to amend the trial information. In its motion, the State sought to "add[] aiding and abetting as an alternative theory" and to "remove[] fact-specific language following the statutory language of the charge," that is, to remove the language quoted above regarding the bill of sale for the used trailer. The district court allowed the State to amend the trial information to remove the above-quoted language but refused to allow the State to add an alternative aiding-and-abetting theory.

The case proceeded to retrial on January 26. At retrial, Brouse testified his company, Changing Horses, paid $10,500 cash to the Weeses for the purchase of their used trailer and also agreed to provide $12,000 in advertising on his television show titled *Saddle Up* for the Weeses' restaurant as a services-in-kind exchange. A rolling credit for the restaurant appeared in the "Special Thanks" section at the end of all thirteen episodes of *Saddle Up*'s first season. Brouse introduced an expenditure report Witter had sent him that split the Weese trailer transaction into $10,500 in cash outlay and $12,000 in an in-kind exchange, for a total qualifying amount of $22,500. This expenditure report was not the same report Witter submitted to Wheeler on behalf of Changing Horses for approval for tax credits, which also listed the expense of the trailer as $22,500 but did not divide the expenditure into separate payment categories.

Shirley Weese testified she did not enter into an additional deal with Brouse beyond the $10,500 cash for the trailer and she did not enter into an agreement with Brouse for the remainder of the price of the trailer to be exchanged for advertising on *Saddle Up.* Shirley testified she and her husband signed a bill of sale for the trailer in the amount of $21,000 because Brouse asked her to do so, even though they had a deal to sell the trailer to Brouse for $10,500 cash.

The State introduced the bill of sale at trial, signed by both of the Weeses but unsigned by Brouse. Brouse submitted a phone log Wheeler kept when he contacted vendors to "spot audit" various purchases. The log shows Shirley confirmed on the phone with Wheeler that Brouse had purchased the trailer from the Weeses for $22,000 and that she had received payment in full. Brouse also submitted an exchange of e-mails between Shirley and Wheeler in which Shirley confirmed the purchase price of the trailer was $22,000. The audit tie-out sheet submitted by the State shows the trailer was paid for in two transactions: $10,500 in cash and $10,500 in services. This sheet and the bill of sale were never shown to Wheeler and were not used to issue tax credits to Brouse.

Following the close of evidence, the district court granted Brouse's motion for judgment of acquittal as to the bill of sale as a false statement in writing but denied his motion as it pertained to the expenditure report.

On January 30, a jury found Brouse guilty of fraudulent practice in the first degree. Brouse timely filed a motion in arrest of judgment and motion for new trial, arguing his conviction violated the statute of limitations and the double-jeopardy clause of the federal and state constitutions, there was insufficient

evidence to support his conviction, the verdict was contrary to law and contrary to the weight of evidence, and the district court improperly instructed the jury on the elements of first-degree fraudulent practice. The court denied Brouse's motions.

On March 23, the district court sentenced Brouse to an indeterminate term not to exceed ten years, suspended the sentence, and placed him on probation for a period of two years. The court also ordered Brouse to pay a $1000 fine and entered an order of restitution in the amount of $6000. Brouse appeals.

## II.     Analysis

### A.     Double Jeopardy

Brouse argues the district court erred in denying his motions to dismiss based on his claim that retrial on the charge of first-degree fraudulent practice violated the double-jeopardy clause of both the federal and state constitutions. Specifically, Brouse contends the first jury must have acquitted him of fraudulent practice in the first trial based on the expenditure report because it acquitted him of theft and ongoing criminal conduct. Therefore, he claims double jeopardy barred retrial on the charge of first-degree fraudulent practice based on the same factual theory that the expenditure report was a false statement in writing made for the purpose of procuring economic development assistance.

We review a district court's ruling on a motion to dismiss for correction of errors at law. *See State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). We review constitutional claims de novo. *Id.*

Brouse speaks in assumptions and possibilities and provides no citations in support of his arguments. He acknowledges "[t]here was no way to determine for sure what factual or legal theory the first jury convicted Brouse under."

Accordingly, we consider his double-jeopardy claim waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").[1]

### B.   Statute of Limitations[2]

Brouse argues the district court erred in denying his motion to dismiss the charges against him after the State amended the trial information following the expiration of the statute of limitations. Brouse's contention is premised on his argument that the State's November 2014 amendment to the trial information effectively dismissed all other factual and legal theories the State had previously presented other than the theory Brouse knowingly created the false bill of sale for the trailer in order to obtain additional tax credits. Specifically, Brouse claims the State's amendment dismissed its claim that the expenditure report was a false statement used to procure the tax credits. Thus, he claims, the State's January 2015 amendment removing the specific factual language concerning the bill of sale, effectively allowing the State to claim the expenditure report as a false written statement and to expand its factual theory of fraudulent practice, violated the statute of limitations. Brouse also contends the district court should have denied the State's motion to amend because the amendment prejudiced his "substantial rights" and charged "a wholly new and different offense." Iowa R.

---

[1] Brouse further argues in his reply brief that our previous decision reversing Brouse's conviction for fraudulent practice bars retrial. "We will not consider matters raised for the first time in a reply brief." *State v. Willet*, 305 N.W.2d 454, 458 (Iowa 1981).

[2] The State contends Brouse did not preserve error on this issue because Brouse did not object to the State's November 2014 amendment to the trial information. Brouse responds the violation of the statute of limitations did not occur when the State amended the trial information in November 2014, but rather, when the State amended the trial information in January 2015. Brouse filed a resistance to the State's January 2015 motion to amend the trial information and additional minutes and a motion to dismiss. On this record, Brouse has preserved error for our review.

Crim. P. 2.4(8). As noted above, we review a district court's ruling on a motion to dismiss for correction of errors at law. *See Neiderbach*, 837 N.W.2d at 190.

The State initially charged Brouse with one count of fraudulent practice in the first degree on January 10, 2011. On March 23, the State filed its first bill of particulars, alleging several documents, including the expenditure report, to be false written statements used for the purpose of obtaining tax credits for Brouse's benefit. On January 24, 2012, the State filed a supplemental bill of particulars, which added the bill of sale for the Weeses' trailer as an additional false written statement. During Brouse's first trial, the State argued both documents were "false statement[s] in writing" knowingly used by Brouse, either directly or indirectly, "for the purpose of procuring economic development assistance from a state agency . . . for the benefit of [Brouse]." Iowa Code § 15A.3.

Following Brouse's conviction and our reversal and remand on appeal, Brouse filed a motion for bill of particulars in October 2014, specifically requesting that the State declare the factual and legal theories upon which it intended to rely at retrial. In response, the State filed an amended trial information addressing these concerns. The State based its allegations of first-degree fraudulent practice against Brouse on the bill of sale for the Weeses' trailer. Brouse did not resist the amendment. On January 23, 2015, the State filed a motion to amend the trial information seeking to remove the language providing the bill of sale was the factual basis for the charge. The following business day, Brouse filed a resistance to the State's motion and a motion to dismiss, arguing the State's amendment violated the statute of limitations

because it charged a wholly new and different offense following the State's dismissal of its theory of fraudulent practice based on the expenditure report.

"The purpose of an indictment or information is to apprise the defendant of the crime charged so that the defendant may have the opportunity to prepare a defense." *State v. Grice*, 515 N.W.2d 20, 22 (Iowa 1994). Pursuant to Iowa Rule of Criminal Procedure 2.4(8)(a), a court may order the trial information amended "either before or during the trial . . . to correct errors or omissions in matters of form or substance," so long as "(1) substantial rights of the defendant are not prejudiced [by the amendment], and (2) a wholly new or different offense is not charged." *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997) (citations omitted).

Here, the State initially charged Brouse with fraudulent practice in the first degree under section 15A.3. Following remand, the State did not amend the trial information to charge a new violation under a different section or subsection of the code. Instead, the State amended the trial information to specify which document it intended to rely upon as proof Brouse "engaged in deception and knowingly made or caused to be made, directly or indirectly, a false statement in writing, for the purpose of procuring economic development assistance from a state agency for the benefit of himself or a film making entity called Changing Horses." Later, the State moved to amend the trial information to remove the detailed allegation Brouse had "requested Wayne and/or Shirley Weese to sign a 'Bill of Sale' stating that the price of the trailer he bought from them was twice the actual price, in order to double the value of tax credits he received for it."

Brouse attempts to base his argument that each false writing is a separate offense on Iowa Code section 715A.7. That section allows the State to charge

multiple counts of forgery or other related fraudulent criminal acts against an individual in "[a] single information, indictment, or complaint." Iowa Code § 715A.7. It does not provide that each false writing made or caused to be made for the purpose of procuring economic development assistance must be considered a separate offense. *See id.*

Brouse also cites *State v. Jacobs*, 607 N.W.2d 679, 688 (Iowa 2000), in support of his position. In *Jacobs*, the supreme court examined what constituted a separate offense for purposes of double jeopardy. 607 N.W.2d at 687–88. Jacobs was an attorney who was charged with four counts of first-degree fraudulent practice arising from his mishandling of his clients' financial accounts—three estates and a conservatorship—on separate occasions over a period of several years. *Id.* at 683. The State presented evidence Jacobs had engaged in over 150 transactions and elaborately concealed them, ultimately stealing over $185,000 from his clients for his own personal benefit. *Id.* The court noted:

> The defendant engaged in numerous, separate[] transactions in connection with each theft, and each of the transactions constituted a separate offense. . . .
> . . . .
> Each time the defendant improperly took funds from his client he committed a theft. When he used cashier's checks and money orders to conceal the source of his funds he committed money laundering. When he subsequently falsely reported such transactions in probate reports and other court documents he committed fraudulent practices. Since the sentences imposed on these transactions were based on separate and distinct acts, there is no double-jeopardy violation.

*Id.* at 688.

Clearly, the State did not charge Jacobs with one count of fraudulent practice for each transaction or each false written statement. Thus, it does not follow Brouse was required to have been charged separately for each false written statement—the bill of sale and the expenditure report—or that the State's amendment of the trial information removing specific language regarding the bill of sale charged a wholly new or different offense when it charged the same offense of first-degree fraudulent practice. *See also State v. Hoyman*, 863 N.W.2d 1, 3–4 (Iowa 2015) (involving charges of felonious misconduct in office, first-degree theft, and first-degree fraudulent practice after the defendant made false entries inflating his earnings as a city attorney for several years by billing for trials and prosecutions that did not actually occur); *State v. Knutson*, No. 05-1802, 2006 WL 3019229, at *1 (Iowa Ct. App. Oct. 25, 2006) (charging the defendant with one count of first-degree fraudulent practice—although the defendant later pled guilty to third-degree fraudulent practice—after an independent auditor concluded over $100,000 was missing from a school district's accounts, for which the defendant was responsible); *State v. Kraklio*, No. 03-0813, 2005 WL 156803, at *1 (Iowa Ct. App. Jan. 26, 2005) (charging the defendant with three counts of first-degree fraudulent practice after he and his wife defrauded the Iowa Department of Human Services for almost twenty years in order to obtain three different types of welfare assistance). Here, both writings supported the same criminal act—making or causing to be made, directly or indirectly, a false written statement for the purpose of obtaining additional tax credits from the purchase of the Weeses' trailer. The separate writings did not constitute separate offenses.

Furthermore, Brouse faced the same penalty under the January 2015 amendment as he did under the prior amendment. The amended trial information contained "[t]he name of the accused," "[t]he name and . . . the degree of the offense, identifying by number the statutory provision . . . alleged to have been violated," "a brief statement of the time or place of the offense," and "a brief statement of the acts or omissions by which the offense is alleged to have been committed." Iowa R. Crim. P. 2.4(7); *see State v. Brisco*, 816 N.W.2d 415, 420 (Iowa Ct. App. 2012) (concluding a proposed amendment to the trial information changing the offense from delivery of crack cocaine to delivery of marijuana did not charge a wholly new or different offense when the amended trial information contained the same times, dates, and places of the alleged offenses); *see also State v. Harrington*, No. 03-0915, 2005 WL 723891, at *4 (Iowa Ct. App. Mar. 31, 2005) ("Amending a trial information to allege a different means of committing the same crime . . . is permitted because it 'would clearly not be a "wholly new and different offense."'" (citation omitted)). Therefore, we find the State's amendment in January 2015 did not charge a wholly new or different offense. Accordingly, the statute of limitations was not violated when the State amended the trial information in January 2015.

The remaining question then is whether the amendment prejudiced Brouse's "substantial rights." *Maghee*, 573 N.W.2d at 6. "An amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended information." *Id.* (citing *State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977)). Brouse was not prejudiced by the amendment because the initial bill of

particulars included the expenditure report as a false written statement in support of the fraudulent-practice charge and the expenditure report was submitted at the first trial. Brouse was on notice the State may choose to rely on the expenditure report to support its theory of the case, and he had an opportunity to prepare a defense. Therefore, we determine the amendment did not surprise Brouse and his substantial rights were not prejudiced. *See* Iowa R. Crim. P. 2.4(8)(a).

Accordingly, we conclude the State's amendment to the trial information neither charged a wholly new or different offense nor prejudiced Brouse's substantial rights, and thus, the district court did not err in denying Brouse's motion to dismiss based on his claim the amendment of the trial information violated the statute of limitations.

### C. Evidentiary Rulings

Brouse contends the district court abused its discretion in admitting evidence of the total amount of tax credits Brouse's company, Changing Horses, received because the admission violated the motion in limine.[3] The State claims the evidence of the value of tax credits Brouse received, $884,154.09, was

---

[3] The State argues Brouse failed to object to the admission of the total amount of tax credits he received under the Film Program on the basis it violated the motion in limine, and, therefore, Brouse's argument is waived. *See State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011). "Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial." *State v. Tangie*, 616 N.W.2d 564, 568 (Iowa 2000). "However, 'where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial.'" *Id.* at 568–69 (quoting *State v. Miller*, 229 N.W.2d 762, 768 (Iowa 1975)). Thus, "[i]n such a situation, the decision on the motion has the effect of a ruling." *Id.* at 569 (citation omitted). Because the State agreed to that provision of Brouse's motion in limine and the district court sustained the motion, Brouse was not required to object at trial. Error is preserved. *See State v. Schaer*, 757 N.W.2d 630, 634 (Iowa 2008). Furthermore, even though Brouse did not reference the motion in limine, he also preserved error by objecting during trial to the evidence as irrelevant.

relevant to show his motive to commit the crime. The State also argues the probative value of the evidence outweighs any claimed prejudicial value. The State further contends, since copies of the tax credit certificates transferring the tax credits to other individuals had previously been admitted into evidence without objection and the jury knew the certificates were transferable and could be sold for cash, there was no prejudice to Brouse; in fact, the State asserts Brouse benefitted by the testimony he had received only $884,154.09 and not $1,194,579.

We review a district court's evidentiary rulings for an abuse of discretion. *Neiderbach*, 837 N.W.2d at 190. An abuse of discretion occurs "[w]hen the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). A ground or reason is untenable if it is "based on an erroneous application of the law or not supported by substantial evidence." *Id.* Even if there has been an abuse of discretion, we need not reverse if the inclusion or exclusion was harmless to the defendant. *State v. Reynolds*, 765 N.W.2d 283, 288 (Iowa 2009), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). "An erroneous evidentiary ruling is harmless if it does not cause prejudice." *State v. Redmond*, 803 N.W.2d 112, 127 (Iowa 2011). "[U]nder [Iowa Rule of Evidence] 5.103(a) we presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise." *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004).

Brouse is charged with having committed the crime of fraudulent practice arising out of the transaction with the Weeses. Certainly, the value of the tax credits Brouse received from that transaction is relevant to show his motive to commit the crime that was alleged. But the question is whether the evidence of how much money he received for lawful transactions—whether $1, $10 million, or $884,154.09—tends "to make the existence of any fact that is of consequence to the determination of [this] action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401.

The previous admission of the tax certificates occurred during testimony explaining how the tax credit program worked and was not accompanied by any testimony as to the actual value of the certificates Brouse received. When Brouse later testified, the State asked how much money he actually received. His counsel objected as to relevance. The State continued with questioning instead of waiting for the court to rule. The objection clearly invoked the motion in limine, which had sought to exclude "testimony . . . regarding how much money [Brouse] personally was paid while working for Changing Horses." Although at the hearing on the motion the State conceded such testimony should be excluded per the motion in limine, and the court sustained that provision of the motion, at trial, the State resisted Brouse's relevance objection, and the court overruled it.

We fail to see how any properly obtained credit is relevant to prove improperly gained credits. We do, however, see how telling the jury Brouse received nearly $1 million in exchange for tax credits might influence them to render a verdict against Brouse for reasons beyond the elements of the offense

charged. Evidence that he received other tax credits lawfully is not relevant as to whether he committed the crime for which he was charged. Even if it were relevant, as the State argues, the obvious prejudice to Brouse outweighs any probative value of the evidence. The district court abused its discretion and committed reversible error in overruling the objection to the State's questions posed to Brouse concerning the value of the tax credits he received that were lawfully obtained.

Having determined the district court abused its discretion, we consider whether there is overwhelming evidence in the record to overcome the presumed prejudice. *See* Iowa R. Evid. 5.103(a); *State v. Howard*, 825 N.W.2d 32, 41–42 (Iowa 2012) (noting "[w]e presume the defendant's rights have been prejudiced" when the trial court erroneously admits or excludes evidence "unless the State can affirmatively establish" there is "overwhelming evidence of the defendant's guilt"); *see also State v. Parker*, 747 N.W.2d 196, 209 (Iowa 2008) (holding an appellate court will only reverse a ruling on the admission of testimony if "the rights of the objecting party have been 'injuriously affected by the error' or [if] the party has 'suffered a miscarriage of justice'" (citation omitted)).

Although the Weeses testified they agreed to sell their trailer to Brouse for $10,500 in cash and Brouse asked Shirley to tell Wheeler they had agreed on a higher purchase price for the trailer so that he could obtain additional tax credits, Brouse testified he entered into an agreement with the Weeses to provide advertising for their restaurant in his television series and to continue to do business in their restaurant in addition to the agreement to pay $10,500 in cash. The expenditure list Witter sent to Brouse and the audit tie-out sheet both noted

Brouse made partial payment to the Weeses for the trailer with services in kind. The State submitted an e-mail Brouse had sent to his accountants stating he had purchased the trailer for "$10k and put their business name etc. on the series."[4] Upon our review of the record before us, we conclude there is not overwhelming evidence of Brouse's guilt. Therefore, we find the State has failed to affirmatively establish a lack of prejudice and Brouse is entitled to a new trial.

Because we find this issue dispositive, we decline to reach the remaining issues raised by Brouse in this appeal, except for the legal issue raised concerning the fraudulent-practice marshalling instruction as the issue is likely to reoccur on retrial.

### D. Jury Instruction

Brouse argues the district court improperly instructed the jury in its marshalling instruction by refusing to submit all of the required elements of fraudulent practice in the first degree under Iowa Code section 714.9 in addition to the elements found in section 15A.3.

The challenged marshalling instruction stated:

> INSTRUCTION NO. 14
> As to Count 1, the State must prove all of the following elements of Fraudulent Practice in the First Degree.
> 1. On or from July of 2008 through October of 2008, the defendant engaged in deception.
> 2. The defendant knowingly made or caused to be made, directly or indirectly, a false statement in writing.
> 3. The defendant made the false statement with the specific intent of obtaining economic development assistance from a state agency or political subdivision.

---

[4] Brouse claims the district court should not have admitted this e-mail contained within a series of e-mails between Brouse and his accountants because it was hearsay. The e-mail authored by Brouse was not hearsay because it is an admission by a party opponent. See Iowa R. Evid. 5.801(d)(2).

4. The defendant acted to benefit himself or for whom he was acting.

If the State has proved all of the elements, the defendant is guilty of Fraudulent Practice in the First Degree. If the State has failed to prove any one of the elements, the defendant is not guilty of Fraudulent Practice in the First Degree.

Brouse contends the instruction should have included the following additional elements: (1) "[t]he defendant knew at the time the written statement was made that it was false," (2) the defendant intended to receive "economic development assistance to which he was not entitled," and (3) "[t]he amount of money or value of the economic development assistance that was received improperly, or intended to be received improperly, as a result of the false statement exceeded $10,000."[5] Brouse claims the district court's failure to include the value element in the marshalling instruction prejudiced him because the difference in the amount of tax credits he received based on the reported purchase price as compared to the amount he would have received for the portion he paid in cash was only $6000.[6]

We review challenges to jury instructions and a district court's refusal to submit a requested jury instruction for correction of errors at law. *See Alcala*, 880 N.W.2d at 707. "Our review is to determine whether the challenged instruction accurately states the law and is supported by substantial evidence." *State v. Spates*, 779 N.W.2d 770, 775 (Iowa 2010). If there is an error in giving

---

[5] Effectively, Brouse's proposed instruction combined the elements of Iowa Code sections 15A.3 and 714.9 and Iowa Criminal Jury Instruction 1400.25.

[6] This amount is calculated by taking the $22,500 submitted to Wheeler in the expenditure report, multiplied by 50% ($11,250)—allowing a 25% tax credit to a producer for qualified expenditures to an Iowa-based business plus a 25% tax credit to an investor for the same—less the $10,500 paid in cash to the Weeses for their trailer, also multiplied by 50% ($5250), to reach the difference Brouse obtained in tax credits: $6000 ($11,250-$5250=$6000).

or refusing to give a particular instruction, we will reverse unless the record shows there was no prejudice. *State v. Becker*, 818 N.W.2d 135, 141 (Iowa 2012), *overruled on other grounds by Alcala*, 880 N.W.2d at 708. "[P]rejudice will be found . . . where the instruction could reasonably have misled or misdirected the jury." *Id.*

The State charged Brouse with fraudulent practice in the first degree, in violation of Iowa Code section 15A.3. Iowa Code section 15A.3 provides:

> A person who engages in deception and knowingly makes or causes to be made, directly or indirectly, a false statement in writing, for the purpose of procuring economic development assistance from a state agency or political subdivision, for the benefit of the person or for whom the person is acting, is guilty of a fraudulent practice in the first degree as defined in section 714.9. For purposes of this section, "deception" means deception as defined in section 702.9.

Iowa Code section 714.9 defines fraudulent practice in the first degree as "a fraudulent practice where the amount of money or value of property involved exceeds ten thousand dollars. Fraudulent practice in the first degree is a class 'C' felony."

The State contends section 15A.3 merely cross-references the penalty portion of section 714.9, or the degree of the offense, for sentencing purposes and the legislature did not intend for a specific value to be proven as an element of the crime under section 15A.3. In fact, the State argues, section 15A.3 is written so broadly that an individual need not even obtain *any* economic development assistance in order to be held criminally liable for first-degree fraudulent practice, but rather, merely "engage[] in deception . . . for the *purpose of procuring economic development assistance.*" Iowa Code § 15A.3 (emphasis

added). Furthermore, the State contends, even if it were error for the court to refuse to instruct the jury as to value of the property involved, Brouse cannot show he was prejudiced by the court's failure.

Section 15A.3 provides the elements of the offense of fraudulent practice in the first degree for the purpose of procuring economic development assistance. We determine the reference to "as defined in section 714.9" is for sentencing classification purposes and does not introduce a separate element for the amount or value of property or services.[7] Brouse's interpretation would have the effect of allowing a fraudulent practice of procuring economic development assistance of less than $10,000 as not being a crime at all. We do not agree. We find no error in the jury instruction as given.

### III. Conclusion

We determine Brouse has waived his double-jeopardy claim because he fails to cite any authority in support of the claim; the State's amendment in January 2015 did not violate the statute of limitations because it did not charge a wholly new or different offense; and the district court's fraudulent-practice marshalling instruction was proper. We reverse Brouse's conviction and remand for a new trial because the district court abused its discretion in admitting

---

[7] Our supreme court's decision in *State v. Osborn*, 368 N.W.2d 68 (Iowa 1985), is helpful in making this determination. In *Osborn*, the court discussed the history of the criminal code and its 1978 revision and noted "the present provision [of section 422.25(5)] that the offender 'shall be guilty of a fraudulent practice' [for willfully failing to pay income tax] was substituted for the prior penalty language." 368 N.W.2d at 69. The court ultimately determined the designation of the crimes in section 422.25(5) as fraudulent practices changed only the penalty provision but not the elements of the offenses. *Id.* at 69–70. Similarly, we determine the designation of the crime in section 15A.3 as fraudulent practice in the first degree refers to the penalty for violating this code section and does not change the elements of the offense.

evidence regarding the value of the total amount of tax credits Brouse received.

We decline to address Brouse's remaining claims.

**REVERSED AND REMANDED.**